PER CURIAM.
Respondent Cesar M. de la Puente has petitioned this Court to review the findings of fact and recommended disciplinary measures in the referee’s report. We have jurisdiction pursuant to article V, section 15 of the *67 Florida Constitution. We approve both the report and the recommended discipline.
This disciplinary action grew out of de la Puente’s use of client trust account funds for personal and business matters not related to the specific purpose for which the funds were held in trust. De la Puente was retained by Andrea Teresa Espino in regard to a guardianship matter for her son, Jesus Espino. After Jesus died, the circuit court issued an order authorizing payment of $10,000 to de la Puente for services rendered and disbursement of up to $40,000 to Espino as guardian of Jesus. Without Espino’s knowledge, de la Puente closed Jesus’s accounts and obtained two cashier’s checks: one for $10,000 payable to himself; another for $37,896.56 payable to Espino. De la Puente deposited both cheeks in his trust account.
In response to a complaint by Espino, the Bar conducted an audit of de la Puente’s trust account. The preliminary results of the audit revealed that de la Puente had used Espino’s funds and had lied to the Bar by stating that the funds were in his trust account. The Bar filed a petition for emergency suspension, arguing that de la Puente had failed to appear and produce his records in response to a subpoena that had been served upon his secretary. This Court granted the petition and suspended de la Puente on January 19, 1994. On February 3, 1994, de la Puente filed a motion for rehearing to vacate the order of emergency suspension, arguing that he was on vacation when the subpoena was left with his secretary and he was never personally served. He also noted that the petition for emergency suspension was not served on him and that he was not given an opportunity to respond before this Court entered its order. Upon consideration of de la Puente’s motion for rehearing, this Court vacated the order of emergency suspension on April 5, 1994.
On February 3, 1994, de la Puente forwarded to the Bar a cashier’s check in the amount of $37,069.56 payable to Espino. The Bar did not disburse these funds to Espino because it was unable to ascertain the source of the funds and feared damage to other clients. On February 15,1994, the Bar sought appointment of a referee in regard to disbursement of these funds or any other relief deemed appropriate. The Bar filed a complaint against de la Puente on March 10, 1994, alleging the same misuse of Espino’s funds that was detailed in the petition for emergency suspension. The Bar also filed a motion for order to show cause, alleging that de la Puente had engaged in the practice of law while suspended.[1] This Court referred the matter to a referee on April 5, 1994.
After the audit revealed other trust account irregularities, the Bar filed an amended complaint and a second amended complaint in July 1994, charging twelve counts of misconduct involving Espino and other clients. The referee conducted a hearing in July and issued his report in September 1994.
The referee found clear and convincing evidence of misconduct as to nine counts in the complaint. The referee made a general finding that de la Puente operated his trust account as a “ponzi” type of operation:
As soon as he deposited the Trust Funds of a client into his Trust Account, he began withdrawing funds from that account to pay himself and his personal and business obligations. The balance of funds in the account, were [sic] many times less than the Trust total amounts that were supposed to be there. When he collected another Trust amount from another client, he would deposit it and count on those funds to cover and pay the missing funds of a prior client. He then dipped again into the Trust money for himself and relied on other Trust Funds from other clients or transactions to be deposited in his Trust Account to try to cover the shortages.
The referee also made the following specific findings as to each count supported by the evidence. In counts I-IV, which involve de *68 la Puente’s representation of Dianys Sanchez and Rosa Aida Rivera in a personal injury action stemming from a car accident, the referee found that de la Puente forged each woman’s signature on a check from an insurance company for medical payments, deposited the funds in his trust account without notice to Sanchez or Rivera, and used the funds for personal and business matters unrelated to the purpose for which they were held in trust. The referee also found that de la Puente fabricated letters in the clients’ files purportedly memorializing the clients’ consent to his actions and attempted to suborn perjury by telling Rivera to lie about the check if anyone asked her about it. In count V, which involves the Espino guardianship matter, the referee found that Espino did not endorse the cashier’s check that de la Puente alleges she signed and did not consent to de la Puente’s use of these funds. The referee also found that de la Puente “took Mrs. Espino’s money for himself’ and was “self dealing” in his representation of Espino. In Counts VI, VII, and IX, the referee found that de la Puente used trust funds for his own business and personal matters, commingled trust funds, and paid the funds of one trust with other unrelated trust funds. In Count VIII, which involves de la Puente’s representation of the Estate of Aida M. Hernandez, the referee found that de la Puente made a false representation as to the amount and location of estate funds in a petition for discharge filed with the probate court, misappropriated estate funds in order to cover shortages of other trust funds, and forged the name of the estate’s personal representative on estate checks.
The referee concluded that de la Puente had violated the following Rules Regulating The Florida Bar: 4-3.3(a)(l) (knowingly making a false statement of material fact or law to a tribunal); 4-3.4(a) (obstructing access to evidence by altering a document); 4-3.4(c) (knowingly disobeying an obligation under the rules of a tribunal); 4r-8.4(a) (violating the Rules of Professional Conduct); 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 4-8.4(d) (engaging in conduct prejudicial to the administration of justice); and 5-1.1(a) (money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only for that purpose). The referee recommended that de la Puente be disbarred and not permitted to reapply for ten years, and that he be assessed $20,137.17 in costs. De la Puente has petitioned for review of the findings and recommendations of guilt on the nine counts, the recommended discipline, and the assessment of costs against him.
A referee’s findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla. 1986). If the referee’s findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). The party contending that the referee’s findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
We find that the referee’s findings of fact and recommendations of guilt are supported by the record and that de la Puente has not carried his burden in demonstrating otherwise. As to Counts I-V and VIII, de la Puente essentially argues that there is not competent, substantial evidence of his guilt because his testimony contradicted the witnesses’ testimony. However, four different witnesses testified that they did not sign the checks in question and did not give de la Puente permission to sign their names or to use their funds. De la Puente further contends that he did not “forge” any signatures because he signed the checks in his own handwriting and did not attempt to mimic the clients’ signatures. We find this argument unpersuasive. De la Puente still signed these individuals’ names without their *69 consent in order to negotiate the checks and have use of the funds.
De la Puente also argues that the Bar did not prove lack of client consent as to the trust funds at issue in Counts VI, VII, and IX. However, consent was not at issue in those counts. As to each count, the Bar auditor testified and presented documentary evidence that de la Puente used the trust account funds for personal and business matters unrelated to the matters for which the funds were held in trust, commingled the trust funds, and paid the obligations of one client with other unrelated trust funds. The auditor similarly showed that de la Puente used estate funds to cover the shortages in the trust account funds. As provided in rule 5-l.l(a), “[m]oney or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose.” R.Regulating Fla.Bar 5—1.1(a). The record supports the referee’s findings of guilt as to these counts.
As to Count VIII, de la Puente argues that the accounting filed with the probate court only represented the estate “assets remaining on hand” and did not state that the assets remained in the account. De la Puente asserts, as he testified at the referee hearing, that he and the personal representative had the estate monies and that he did not misappropriate any of the funds. However, the Bar auditor testified and presented documentary evidence that de la Puente transferred funds from the estate account to his trust account which he used for purposes not related to the estate and that he misrepresented the amount of estate funds on hand in the accounting attached to the petition for discharge filed with the probate court. Personal representative Raquel Abich further testified that she did not approve the transfers to de la Puente’s trust account and did not cosign the checks in question.
Based upon this record evidence, we approve the referee’s findings of guilt as to Counts I-IX and find that de la Puente violated the Rules Regulating The Florida Bar specified by the referee.
The referee recommended that de la Puente be disbarred from the practice of law “with a right to reapply not sooner than after 10 years.” De la Puente argues that this recommendation of enhanced disbarment is not an appropriate discipline. In reviewing the referee’s recommendation for discipline, our scope of review is somewhat broader than our review of the factual findings because this Court ultimately has the responsibility to order an appropriate sanction. Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989).
Rule Regulating The Florida Bar 3-7.10(a) provides that a former member of the Bar who has been disbarred may not tender an application for admission “within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order.” Thus, while disbarment normally precludes reapplication for five years, the rule obviously contemplates a longer period where the circumstances warrant. In this case, de la Puente repeatedly used client trust funds for his own purposes, forged signatures on checks so that he could use those funds, misrepresented information to a court in a probate proceeding, fabricated evidence pertinent to this bar proceeding, and told a witness to lie. Several of these actions, when considered alone, create a presumption that disbarment is the appropriate penalty. See, e.g., Florida Bar v. Kickliter, 559 So.2d 1123 (Fla.1990) (disbarring attorney for forging client’s signature on will and submitting forged will for probate); Florida Bar v. Breed, 378 So.2d 783, 785 (Fla.1979) (“[W]e will not be reluctant to disbar an attorney for [misuse of client funds] even though no client is injured.”); see also Fla. Stds. for Imposing Law.Sancs. 4.11 (disbarment appropriate when lawyer intentionally or knowingly converts client property regardless of injury or potential injury), 4.61 (disbarment appropriate when lawyer knowingly or intentionally deceives client with intent to benefit lawyer or another regardless of injury or potential injury), 6.11 (disbarment appropriate when lawyer, with intent to deceive court, knowingly makes false statement or submits false document), 6.31 (disbarment appropriate when lawyer intentionally directly or indirectly tampers with a *70 witness). Moreover, “[t]he Court deals more harshly with cumulative misconduct than it does with isolated misconduct.” Florida Bar v. Bern, 425 So.2d 526, 528 (Fla.1982).
In light of the multiple misconduct involved and the nature of the misconduct at issue, we approve the referee’s recommendation that de la Puente be disbarred and not be eligible to reapply for ten years after the date of disbarment. See Florida Bar v. Na-gel, 440 So.2d 1287 (Fla.1983) (finding that conversion of clients’ funds warrants disbarment and ineligibility for readmission to Bar for period of ten years).
Finally, de la Puente argues that the referee’s recommendation that all costs of these proceedings be taxed against him is erroneous, unlawful, and unjustified. The expenditures itemized in the referee’s report mirror those included in the Bar’s affidavit of costs. These costs include investigative costs, court reporters’ fees, copy costs, witness expenses, Bar counsel’s out-of-pocket expenses, and administrative costs, all of which are specifically authorized as taxable costs in a procedure before a referee. See R. Regulating Fla.Bar 3-7.6(o)(l). Moreover, “absent an abuse of discretion the referee’s award shall not be reversed.” Id. 3-7.6(o)(2).
We note that the Bar sent its affidavit of costs to the referee and de la Puente over one month before the referee issued his report. During the interim, de la Puente raised no objection to the itemized costs. Even now, de la Puente does not specify which expenditures he deems “unnecessary [or] excessive” or those that he alleges “should not even be assessed because they involve costs on Counts where the Referee absolved him of guilt.” Thus, we find no abuse of discretion in the referee’s assessment of $20,137.17 in costs against de la Puente.
Accordingly, we adopt the referee’s report and recommendations as to discipline. Cesar M. de la Puente is hereby disbarred from the practice of law and no petition for readmission will be entertained for ten years from this date of disbarment. Upon the filing of this opinion, de la Puente shall accept no new business. The disbarment will be effective thirty days from the date of this opinion so that de la Puente can close out his practice and protect the interests of existing clients. After that date, de la Puente is enjoined and prohibited from the practice of law in this state. Judgment is entered against de la Puente in favor of The Florida Bar for costs in the amount of $20,137.17, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

. The instant opinion does not address de la Puente’s alleged practice of law while suspended, which is the subject of Case No. 83,361. Because the referee's report did not address that charge, the Bar filed a motion for consideration and ruling. On March 22, 1995, this Court issued an order for the referee to make findings. No findings have been filed and this opinion does not address the issues presented in Case No. 83,361.