761 So.2d 1044 (2000)
THE FLORIDA BAR, Complainant,
v.
Edward C. VINING, Jr., Respondent.
No. SC90645.
Supreme Court of Florida.
May 11, 2000.
Rehearing Denied July 17, 2000.
*1045 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida; and Arlene Kalish Sankel, Bar Counsel, and Gregg David Wenzel, Co-Bar Counsel, Miami, Florida, for Complainant.
Edward C. Vining, Jr., Miami, Florida, Respondent, pro se.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Edward C. Vining, Jr. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the *1046 referee's report and her recommendation that Vining be disbarred.
The Florida Bar filed a two-count complaint against Vining based upon his representation of Iliana Michelson during her dissolution of marriage proceedings. Count I alleged that Vining failed to set a hearing for attorney's fees on Michelson's behalf and failed to keep her informed of the status of her claim. When judgment was entered in Michelson's favor in June 1993 in her dissolution proceedings, the court reserved jurisdiction to determine her entitlement to attorney's fees, suit monies, and costs. Although Vining represented to Michelson that he would obtain a hearing on these remaining issues, she never received notification of a hearing date despite her numerous inquiries for nearly two years. When Michelson expressed her dissatisfaction in a certified letter dated May 2, 1995, Vining responded four months later that he had filed a motion for a hearing date in October 1994. However, Vining never scheduled a hearing on that motion.
Count II involves Vining's failure to clearly communicate his fee to Michelson in violation of rule 4-1.5(e)[1] of the Rules Regulating The Florida Bar. Michelson paid Vining $15,000 as a retainer and was repeatedly told that this fee would cover her legal fees for the entire proceeding. Michelson arrived at a settlement with her former husband regarding the issues of attorney's fees and costs to be paid by the husband. The settlement agreement was premised on Michelson's belief that she owed Vining no additional fees. However, Vining subsequently claimed in a letter that Michelson owed him an additional $20,000 in fees. Vining provided no statements regarding his legal services, submitted no bills to her prior to the letter, and submitted no itemized basis for the billing.
After conducting a two-day hearing, the referee, County Court Judge Victoria S. Sigler, found that Vining had failed to provide detailed billing information to Michelson, did not keep contemporaneous hourly time records regarding her case, and manufactured the records after being ordered by the referee to show them to the Bar. The referee further found that the client had requested that Vining pursue a hearing date on the remaining issues in her case and that Vining had failed to do so. As to Count I, the referee recommended that Vining be found guilty of violating the following Rules Regulating The Florida Bar: rule 4-1.3[2] for failing to schedule a hearing on the attorney's fees claims within a reasonable period following the dissolution order and for failing to keep detailed and contemporaneous written records of the work performed and the hours involved in support of the client's claim for attorney fees; and rules 4-1.4(a)[3] and 4-1.4(b)[4] for failing to keep the client informed of the status of her attorney's fees claim and her responsibility for attorney's fees in excess of the $15,000 retainer and for failing to respond to the client's repeated requests for information about fees and the hearing. As to Count II, the referee recommended that Vining be found guilty of violating rule 4-1.5(e) for failing to provide the client with an accounting of the time and charges accumulated and the basis or rate of his fees, for failing to tell the client that his fee exceeded the retainer when expressly *1047 asked to do so, and for failing to advise the client of the outstanding fees owed when she was negotiating a settlement with her former husband.
The referee recommends that Vining be disbarred. The referee noted that Vining has substantial experience in the practice of law since he was admitted to the Bar in 1959, possesses good legal skills, and has a good reputation in the legal community. However, the referee also noted that Vining has exhibited a pattern of disregard and contempt for his clients and the opposing counsel during the course of the three-year disciplinary proceedings; is currently serving a three-year suspension; has another pending disciplinary proceeding; and has refused to admit any wrongdoing in his conduct with this client or in refusing to respond to the Bar's requests for information. She further noted that although Vining possesses good legal skills he has lost sight of his responsibility to serve as a counselor for his clients and to put the client's interest first.
Vining petitioned this Court to review the referee's report and the recommendation of disbarment. He also requested oral argument, which was granted by the Court.
Vining makes several arguments regarding the referee's factual findings. A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. See Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992); Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). If the referee's findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. See MacMillan, 600 So.2d at 459. The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. See Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
First, Vining contends this case is purely a fee dispute over which the Bar has no jurisdiction. Thus, he argues, none of the evidence or testimony regarding the retainer agreement or fees should have been admitted. We find no merit to this claim. While the underlying issues involved the attorney's fees issue, the Bar complaint was founded on Vining's lack of diligence, his failure to keep Michelson informed about the status of her representation, his failure to explain the matter so that Michelson could make informed decisions regarding the settlement, and his failure to communicate the basis or rate of his fee to Michelson. Thus, the referee properly admitted the evidence relating to the retainer agreement and fees.
Vining also argues that Michelson testified that the retainer was a flat fee and, if this was her understanding, he had no obligation to keep detailed billing information or submit bills to the client. However, Michelson actually testified that she knew that the retainer was not the full fee and repeatedly asked for detailed billing from Vining. Both Michelson and her sister testified that Vining repeatedly assured Michelson that she had not exceeded the retainer amount and that he would inform her if she did. Based on these assurances, Michelson negotiated a settlement with her ex-husband, believing that she had completely settled all of her debts with Vining. Only after Michelson informed Vining of the settlement and the termination of his services did he bill her for an additional $20,000 in fees.
As to the claims of lack of diligence and failure to keep Michelson apprised as to the status of her representation, Vining testified that he was just following Michelson's wishes not to schedule a hearing. However, Michelson testified that she repeatedly sought information on the status of the fee claim, only to be assured by *1048 Vining that he was working on the matter and taking care of it.
Vining essentially argues that there is not competent, substantial evidence of his guilt because his testimony contradicted the testimony of other witnesses. However, a party does not satisfy his or her burden of showing that a referee's findings are clearly erroneous by simply pointing to the contradictory evidence where there is also competent, substantial evidence in the record that supports the referee's findings. See Florida Bar v. Schultz, 712 So.2d 386, 388 (Fla.1998); Florida Bar v. de la Puente, 658 So.2d 65, 68 (Fla.1995). Moreover, the referee's report explains in detail how the referee resolved the conflicting recitation of events given by Vining and by Michelson and her sister. Because the referee was in the best position to resolve this conflict and there is both record and logical support for her conclusion, this Court will not disturb those findings of fact as to guilt. See MacMillan, 600 So.2d at 459.
The Court's scope of review of a referee's recommended discipline, however, is broader than that afforded to findings of fact because this Court has the ultimate responsibility to determine the appropriate sanction. See Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994). Yet, the Court "will not second-guess a referee's recommended discipline so long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997).
Florida Standard for Imposing Lawyer Sanctions 4.41(b) states that disbarment is appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to the client. Standard 8.1 provides that disbarment is appropriate when a lawyer has been suspended for similar conduct and intentionally engages in it again. Additionally, as explained in the commentary to standard 2.2, "[d]isbarment serves the purpose of discipline in that the public is protected from further practice by the lawyer; [and] the reputation of the legal profession is protected by the action of the bench and bar in taking appropriate actions against unethical lawyers." Fla. Stds. Imposing Law. Sancs. 2.2 commentary at 35 (1994).
In determining the appropriate discipline, this Court considers prior misconduct and cumulative misconduct, and treats more severely cumulative misconduct than isolated misconduct. See Florida Bar v. Adler, 589 So.2d 899 (Fla.1991); see also Fla. Stds. Imposing Law. Sancs. 9.22(d) (multiple offenses are one factor that may justify an increase in degree of discipline imposed). Disbarment is appropriate where, as here, there is a pattern of misconduct and a history of discipline. See Florida Bar v. Cox, 718 So.2d 788, 794 (Fla.1998). Additionally, cumulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct. See Florida Bar v. Bern, 425 So.2d 526, 528 (Fla.1982); see also Florida Bar v. Orta, 689 So.2d 270, 273-74 (Fla.1997) (concluding that commission of multiple offenses involving dishonesty while still under suspension for similar misconduct warranted disbarment).
Vining was suspended for three years for "dishonest, fraudulent, and deceitful" conduct before the circuit court in obtaining disputed attorney fees relating to his representation of a client in another dissolution proceeding. The client filed a civil action against Vining and was awarded compensatory and punitive damages for conversion and civil theft. See Florida Bar v. Vining, 707 So.2d 670 (Fla.1998). Vining has another disciplinary proceeding currently pending before this Court. Vining also has another previous disciplinary action in which he received a six-month suspension to run concurrently with the three-year suspension. See Florida Bar v. Vining, 721 So.2d 1164 (Fla.1998) (finding Vining guilty of continued representation of a client after being discharged, failing to abide by the client's decisions concerning *1049 the objective of representation and to consult with the client as to the means by which the objectives are to be pursued, and representing the client even though his independent professional judgment was materially limited by his own interest).
In light of the foregoing, we conclude that Vining's latest transgression is the proverbial "straw that broke the camel's back." Vining has obviously lost sight of his important legal duty to his clients. Thus, we agree with the referee that disbarment is the appropriate discipline in this case.
Edward C. Vining, Jr. is hereby disbarred. This disbarment shall be effective retroactive to June 22, 1998, the date the referee's report was entered in this case. Because Vining is already under suspension, we need not provide the usual thirty-day time period for him to close out his practice. We also enter judgment against Edward C. Vining, Jr., in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for costs in the amount of $5,415.28, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Rule 4-1.5(e) provides:

When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
[2] Rule 4-1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."
[3] Rule 4-1.4(a) provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."
[4] Rule 4-1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."