813 So.2d 38 (2002)
THE FLORIDA BAR, Complainant,
v.
John Newman BRYANT, Respondent.
Nos. SC94965, SC00-801.
Supreme Court of Florida.
February 21, 2002.
*39 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and James N. Watson, Jr., Bar Counsel, The Florida Bar, Tallahassee, FL, for Complainant.
John Newman Bryant, pro se, Jacksonville, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by John Newman Bryant in two separate matters, which were consolidated by the referee. We have jurisdiction. See art. V, § 15, Fla. Const. The Bar raises three issues for our review.[1] Bryant only challenges the assessment of costs.

ALBANO DISCIPLINARY PROCEEDINGS
Frank Albano retained Bryant by telephone in April or May of 1996 to defend Albano in a contempt hearing concerning a failure to pay child support. At the time, Albano lived in Richmond, Virginia, and requested that Bryant seek a continuance at a previously scheduled May 6, 1996, hearing. Bryant obtained the continuance. Bryant testified before the referee that he was "sure" that he had talked with Albano after the May 6 hearing but produced no documentation supporting that contention. Albano testified that he moved in July 1996, to Virginia Beach, Virginia, and telephoned Bryant with his new address and phone number. He further testified that he never heard from Bryant either by phone or correspondence until the matter had been decided against him in December 1996.
The trial judge dismissed the suit on September 16, 1996, for a lack of prosecution. The suit was reinstated in October 1996, and a hearing was set for December 6, 1996. Bryant produced a letter dated October 24, 1996, addressed to Albano at Albano's former Virginia address, advising Albano of the December 6 hearing and requesting that Albano send Bryant records of all subsequent payments Albano made to his ex-wife, Debra. Albano testified that he never received that letter. Bryant produced a handwritten letter from Albano dated November 12, 1996, which purported to include evidence of his child support payments. The letter stated, "Here are the copies of payments to Debra that you requested."
Bryant attended the December 6 hearing, and Albano did not appear. The trial judge denied Bryant's oral request for a continuance and entered an order against Albano requiring Albano to pay $2,900 in child support. Bryant sent Albano a letter to Albano's former address explaining the outcome of the hearing and detailing Bryant's efforts to contact Albano. Albano testified that he did not know about the *40 hearing until his ex-wife notified him about the result. Albano testified that after being notified by his ex-wife about the order, he attempted to talk with Bryant several times to no avail.
The Bar charged respondent with violating rules 4-1.3 (diligence), 4-1.4(a) (informing client of status of representation), 4-1.4(b) (duty to explain matters to the client), and 4-8.4(g) (lawyer to respond to disciplinary agency during investigation) of the Rules Regulating the Florida Bar. The referee found the evidence stale in that both Bryant and Albano had trouble recollecting the events. The referee concluded based on the documentary evidence that Albano was informed of the December 6, 1996, hearing. The referee found that the contact between Bryant and Albano was inadequate to prepare for such a serious hearing. The referee noted that some of the blame rested with Albano. Accordingly, the referee found Bryant not guilty of violating rules 4-1.4(a) and 4-1.4(b). The referee, however, found Bryant guilty of violating rule 4-1.3 (diligence), as Bryant did not sufficiently attempt to protect Albano's interest after it was clear that there had been a loss of communication.
With regard to rule 4-8.4(g) (lawyer to respond to disciplinary agency during investigation), the referee found that the Bar mailed correspondence to Bryant on August 7, 1997, and August 28, 1997, regarding the Albano matter. Bryant did not respond to these letters, which resulted in a referral to the grievance committee on September 7, 1997. Bryant first responded to the grievance committee on April 10, 1998. Accordingly, the referee additionally found Bryant guilty of violating rule 4-8.4(g).
The Bar challenges the sufficiency of the evidence with regard to the referee's determination that Bryant did not violate rules 4-1.4(a) (informing client of status of representation) and 4-1.4(b) (duty to explain matters to the client). The Bar's argument is premised upon its assertion that there was testimony in the record to support a guilt finding. According to the Bar, the referee failed to consider the totality of the circumstances.
We do not disturb the referee's not guilty determinations regarding rules 4-1.4(a) and 4-1.4(b), as the record contains competent, substantial evidence to support the referee's findings. See Florida Bar v. Vining, 761 So.2d 1044, 1047 (Fla.2000). The record contains a letter dated October 24, 1996, in which Bryant notifies Albano of the December 6 hearing and requests copies of the latest child support payments, a handwritten letter dated November 12 in which Albano responds with copies of his latest child support payments, and a letter dated December 6 in which Bryant explains to Albano the results of the hearing. These documents provide an evidentiary basis for the referee's finding that Bryant did inform and explain matters to Albano. The Bar's argument that other evidence exists in the record tending to establish the rule violations is without merit. See id. at 1048 ("[A] party does not satisfy [its] burden of showing that a referee's findings are clearly erroneous by simply pointing to the contradictory evidence where there is also competent, substantial evidence in the record that supports the referee's findings.").
We approve the referee's determinations not contested by Bryant that Bryant violated rules 4-1.3 and 4-8.4(g).

RODEHAVER DISCIPLINARY PROCEEDINGS
While the Albano proceeding was pending, the Bar alleged that in connection with his representation of Pamela Rodehaver, Bryant violated rules 4-8.4(b) (lawyer *41 shall not commit criminal act reflecting adversely on lawyer's honesty, trustworthiness, or fitness), 4-8.4(d) (lawyer shall not engage in conduct prejudicial to administration of justice), and 4-8.4(i) (lawyer shall not engage in sexual conduct with client which exploits lawyer-client relationship). The referee consolidated this proceeding with the Albano proceeding.
Rodehaver and Barbara Herndon were arrested in October 1998 for a misdemeanor violation of a municipal ordinance regulating exotic dancers. Herndon was a long-term acquaintance of Bryant, with whom she occasionally engaged in sexual relations.[2] Bryant's normal fee for representing a defendant in such a case was between $500 and $1500. Rodehaver had little or no money, and she suggested that Bryant represent her in exchange for sexual relations. Bryant agreed. Bryant acknowledges that Rodehaver performed oral sex several times during the pendency of the municipal ordinance charge. The municipal ordinance case was concluded to Rodehaver's satisfaction.
Shortly after the conclusion of the municipal ordinance charge, Rodehaver was again arrested. This time, she was arrested on several first-degree felony racketeering charges. Authorities suspected that Rodehaver was operating a large prostitution ring, which eventually turned out to only be a few women. While Rodehaver was being held in jail on a $100,000 bond, Bryant was contacted to represent her. Bryant visited Rodehaver in jail and agreed to represent her for $2500. Bryant accepted $750 as part of the payment. Rodehaver did not make any further payment despite Bryant's attempts to collect. There was no sex-for-service discussion with regard to the felony case, and both Bryant and Rodehaver stated that no sexual relations occurred during the felony case.
Rodehaver's truck and computer were confiscated by the State. Bryant was able to obtain the return of the truck but not the computer. Rodehaver and her husband increasingly pressured Bryant to obtain the return of the computer. Bryant requested the remainder of his fee be paid so that he could conduct more discovery.[3] As no further payments were made, Bryant arranged a proffer with Florida Department of Law Enforcement (FDLE) Agent Terrence Mullen. Bryant's strategy was to demonstrate Rodehaver's cooperation, which he hoped would lead the State to reduce the charges or discuss a plea deal. Agent Mullen was not interested in the information Rodehaver had provided him as a proffer.
At about this time, Rodehaver contacted FDLE and related her version of her history with Bryant. Rodehaver would later give to FDLE a sworn statement, wherein she indicated that Bryant attempted to pressure her into having sex with him or he would withhold legal services. As Agent Mullen thought that Bryant possibly was extorting Rodehaver, Mullen requested that Rodehaver wear a body microphone so that Mullen could tape a conversation between Bryant and Rodehaver.[4] After that taped conversation, *42 Mullen visited Bryant. Bryant told Mullen that he had engaged in oral sex with Rodehaver and Herndon in exchange for legal services but denied threatening to quit working on the case. Bryant admitted to Mullen that Bryant told Rodehaver: "The happier you keep me, the harder I will work." Thereafter, Bryant withdrew from his representation of Rodehaver because of the conflict of interest. The public defender was appointed to represent Rodehaver.
The referee concluded that trading sexual favors for legal service was not a per se violation of rule 4-8.4(i) and found Bryant not guilty of violating rule 4-8.4(i). The referee found Bryant violated section 796.07, Florida Statutes (1997), which outlaws prostitution. Accordingly, the referee found Bryant guilty of violating rule 4-8.4(b) (lawyer shall not commit criminal act reflecting adversely on lawyer's honesty, trustworthiness, or fitness). The referee also found Bryant guilty of violating rule 4-8.4(d) (lawyer shall not engage in conduct prejudicial to administration of justice).
The Bar challenges the referee's conclusion that Bryant did not violate rule 4-8.4(i) during his representation of Rodehaver.[5] In concluding there that was no violation, the referee focused on the fact that Rodehaver, being a prostitute, bartered her services for Bryant's legal services. The referee noted that this arrangement was in violation of the criminal law proscribing prostitution but concluded that there needed to be a showing of exploitation to find a rule 4-8.4(i) violation.
The referee found as fact that Bryant told Rodehaver, "The happier you keep me, the harder I will work." Florida Bar v. Bryant, SC94965 & SC00-801, report of referee at 12 (report filed Nov. 18, 2000). The referee also found that, prior to the commencement of the legal representation, there was no previous relationship between Bryant and Rodehaver. Also relevant is the referee's finding that Bryant and Rodehaver engaged in sexual relations which commenced during the period of legal representation.
Bryant testified that he made the "happier you keep me, the harder I will work" statement to Rodehaver. FDLE Agent Mullen testified that Bryant admitted to Mullen that Bryant made this statement. Further, Bryant testified that he met Rodehaver after she was arrested on the municipal ordinance violation and that he engaged in sexual relations with Rodehaver. The transcript of the Rodehaver-Bryant conversation includes Bryant's request for oral sex from his client. Thus, the referee's findings of fact are supported by competent, substantial evidence. See Vining, 761 So.2d at 1047.
The referee discredited Rodehaver's testimony and determined three specific allegations of exploitation were not proven, including claims that Bryant demanded that Rodehaver: (1) perform fellatio upon him in his office instead of fulfilling a voyeuristic role; (2) perform fellatio upon him immediately prior to the final hearing on the misdemeanor charge; and (3) make interest payments in the form of intercourse and oral sex during the felony case.
*43 While accepting the referee's findings of fact, we reject the referee's conclusion that Bryant was not in violation of rule 4-8.4(i). We conclude that the referee erred by focusing on Rodehaver being a prostitute and framing the issue as whether, in view of her prostitution, Rodehaver could be exploited by sex; whereas, the correct focus pursuant to the plain language of the rule is whether a lawyer obtained the sexual activity through an exploitation of the lawyer-client relationship.
When viewed with this proper focus, it is plain that there was a violation of rule 4-8.4(i). Rodehaver performed these sex acts because she required Bryant's services as a lawyer. Thus, the lawyer-client relationship was exploited, and we find that the record does not contain competent, substantial evidence to support the referee's rejection of a rule 4-8.4(i) violation. Accordingly, we find that Bryant violated rule 4-8.4(i).
We approve the referee's determinations not contested by Bryant that Bryant violated ruled 4-8.4(b) and 4-8.4(d).

DISCIPLINE
The Bar challenges the discipline recommended by the referee. We have repeatedly indicated that our review of a referee's discipline is broader than our review afforded to a referee's factual findings because this Court has the ultimate authority to determine the appropriate sanctions. See, e.g., Vining, 761 So.2d at 1048. We do not agree with the referee's proposed discipline.
The referee recommended the cumulative sanctions of a public reprimand, six months probation during which Bryant must complete a Professionalism Enhancement Program, and payment of costs to the Bar in the amount of $5,168.07.[6] The referee found that Bryant was in good standing at the time of these matters and has been a licensed attorney in Florida since 1978. The referee noted three instances of prior minor misconduct:
1. A private reprimand in Case Number 88-00,169(04A) as [a] result of a Report of Minor Misconduct dated July 7, 1988;
2. A private reprimand in Case Number 88-00,192(04A) as [a] result of a Report of Minor Misconduct dated July 5, 1988. Bryant was found guilty of making suggestive comments and conducting inappropriate touching of a female client; and
3. An admonishment in Case Number 97-00,356(04A) as a result of a Report of Minor Misconduct dated September 29, 1997.
Report of Referee at 17.
The Bar contends that the referee's recommended discipline of a public reprimand is insufficient in view of the violations of the rules in respect to Pamela Rodehaver and in view of Bryant's disciplinary history.[7] The Bar seeks instead a one-year suspension. We agree.
In our recent case of Florida Bar v. Scott, 810 So.2d 893 (Fla.2002), we disbarred Scott for ethical misconduct, which included a violation of 4-8.4(i). We *44 recognize that Scott involved conduct even more aggravated than the violations by Bryant, and for that reason we accept the Bar's contention that a one-year suspension is appropriate in this case. We also recognize that case law from other jurisdictions supports a one-year suspension under the circumstances of this case. See People v. Crossman, 850 P.2d 708 (Colo. 1993) (attorney suspended for one year and a day for requesting sexual favors from clients in exchange for reduction of legal fees); see also In re Redd, 660 So.2d 839 (La.1995) (attorney suspended for one year and a day for photographing and touching female applicant's breasts). Members of The Florida Bar and the public should read our decisions in Scott and Bryant as reflecting our serious concern about lawyers violating rule 4-8.4(i). This Court will strictly enforce the rule against lawyers engaging in sexual conduct with a client that exploits the lawyer-client relationship.

CONCLUSION
John Newman Bryant is hereby suspended from the practice of law for one year and must successfully complete a Professionalism Enhancement Program prior to reinstatement. Thereafter, Bryant shall be on probation for two years. The suspension will be effective thirty days from the filing of this opinion so that Bryant can close out his practice and protect the interests of existing clients. If Bryant notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Bryant shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from John Newman Bryant in the amount of $3,633.17, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, LEWIS, and QUINCE, JJ., concur.
PARIENTE, J., concurs with an opinion.
PARIENTE, J., concurring.
I concur fully in the majority opinion.[8] I write separately to urge The Florida Bar to revisit rule 4-8.4(i) and to consider a rule that prohibits all sexual relationships between lawyers and their clients during the attorney-client relationship.
The intent of rule 4-8.4(i) is to broadly prohibit most sexual relationships between lawyers and clients. However, the presence of the qualifier that the sexual conduct must "exploit[]" that relationship may not give clear notice in all circumstances as to the intended broad prohibition envisioned by this rule.[9] Further, the question *45 of what in fact constitutes sexual conduct that "exploits the lawyer-client relationship" in a given case may depend on many variables, including the sophistication of the client, the subject matter of the representation, and the subjective state of mind of the lawyer and the client. Thus, my concern is that the continued use of the qualifier "exploits," creates uncertainty in the application of the rule and the scope of permissible conduct.[10]
Sound reasons exist for an absolute ban on sexual relations between attorneys and clients who are engaged in an ongoing attorney-client relationship. The rules of professional conduct demand that an attorney exercise independent professional judgment in representing the client and thus, objectivity is a necessary prerequisite. Furthermore, there are simply far too many circumstances where a sexual relationship between the lawyer and client creates the potential for adversely affecting the attorney-client relationship, including increased vulnerability on the part of the client and compromised decision-making on the part of the lawyer. This is true even if the sexual relationship began before the commencement of the attorney-client relationshipconduct that is presently permitted under the existing rule.
Regarding conflict of interest concerns, as the author of a law journal notes:
On its face an attorney-client sexual relationship is likely to raise several conflict of interest issues. For instance, the termination of the sexual relationship can result in the termination of the legal representation to the detriment of the client. A sexual relationship may raise disagreement on lawyer's fees. It is recognized that a sexual relationship may alter the lawyer's objectivity and detachment resulting in incompetent representation. A sexual relationship will undoubtedly result in a change in attorney-client self-interest. An attorney in a sexual relationship with a client may not pursue his client's interest zealously out of fear that conclusion of the legal matter would end the sexual affair. In a divorce matter, for example, an attorney may be reluctant to pursue serious reconciliation between the client and his/her spouse. An attorney living with the client or considering a serious relationship with the client may urge the client not to seek child custody. In short, a lawyer may pursue an unwise course of action on behalf of his/her client due to the sexual involvement. Most importantly, sexual involvement with a client may lead a lawyer to commit other ethical violations such as disclosing confidential information or becoming a potential adverse witness. Generally, any information obtained by the attorney in the professional relationship is privileged. When the lawyer is sexually involved with the client, it becomes difficult to determine whether information was obtained in the professional or sexual relationship. For example, a party in a marital dispute could subpoena the opposing attorney to testify regarding any matter arising out of the personal relationship that may be relevant to the divorce and *46 other related issues, as opposed to the professional relationship which is privileged. Most significantly, the sexual relationship can prejudice or injure the client's case.... The emotional involvement characteristic of a sexual relationship, has the potential to compromise the "objective detachment" that is required for adequate representation.
Abed Awad, Attorney-Client Sexual Relations, 22 J. Legal Prof. 131, 173-75 (1998) (footnotes omitted).
The existence of an ongoing sexual relationship has the potential for adversely affecting the attorney-client relationship, regardless of whether in any given instance the quality of the representation actually suffers. As stated in Attorney-Client Sexual Relations, the law journal article cited above, which advocates a per se ban on sexual relationships between attorneys and clients:
Even an arguably "consensual" relationship could end up with a client alleging she was coerced or manipulated into the relationship. An express rule would protect the client from the attorney and the attorney from the client, thereby preserving the integrity of the legal profession. More importantly, an express rule would afford attorneys clear notice that a sexual relationship is a per se ethical violation.
Id. at 136.
Accordingly, for all these reasons, I strongly urge The Florida Bar to consider amending the rule to prohibit all sexual relationships between a lawyer and his or her client during the attorney-client relationship.[11]
NOTES
[1] The Bar argues that: (1) the referee erred in finding Bryant not guilty of violating Rules Regulating the Florida Bar 4-1.4(a) and 4-1.4(b) in the Albano disciplinary proceeding; (2) the referee erred in finding Bryant not guilty of violating rule 4-8.4(i) in the Rodehaver disciplinary proceeding; and (3) the referee's proposed punishment is not sufficient in light of Bryant's ethical violations.
[2] There are no allegations of ethical violations with Bryant's representation of Herndon. Testimony before the referee established that Bryant and Herndon had been engaging in occasional sexual relations long before Bryant represented Herndon on the municipal ordinance violation.
[3] Bryant wanted to take the depositions of several adult entertainers with knowledge of the events because he feared that it would be difficult to remain in contact with these individuals.
[4] The transcript includes statements by Bryant that Rodehaver's obligations for the municipal case had been fulfilled, but there was no sex-for-service discussion regarding the felony case. The transcript does, however, reveal that Bryant requested oral sex from Rodehaver on account that it was his birthday.
[5] Rule 4-8.4(i) provides: "A lawyer shall not... engage in sexual conduct with a client that exploits the lawyer-client relationship."
[6] Bryant challenges $5,168.07 as the correct assessment of costs and contends that $3,633.17 is the correct assessment for both cases. The Bar in its reply brief concurs that the correct total costs in both cases is $3,633.17.
[7] We note that Florida Standard for Imposing Lawyer Sanctions 9.22(a) provides that a minor misconduct finding that is seven or more years old without an intervening disciplinary sanction may not be considered as aggravation. Thus, we find it appropriate to disregard the earlier admonishment as suggested by standard 9.22(a).
[8] I note, as pointed out in the referee's report, that Bryant received a private reprimand in 1988 as a result of being found guilty of making suggestive comments and inappropriately touching a female client. Although neither the referee nor this Court considered this private reprimand, it concerns me that this lawyer was engaged in this type of inappropriate conduct well over a decade before the current incident.
[9] The comment to rule 4-8.4(i) explains, in pertinent part, that the rule

proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. A sexual relationship between a lawyer and a client that exists before commencement of the lawyer-client relationship does not violate this subdivision if the lawyer and client continue to engage in sexual conduct during the legal representation.
[10] As a law journal article has noted, under Florida's rule 4-8.4(i), "a sexual relationship with a client is not exploitative per se. Thus, a lawyer can engage in sex with his client as long as he does not exploit the lawyer-client relationship. The circumstances in which an attorney is exploiting the attorney-client relationship are not clear." Abed Awad, Attorney-Client Sexual Relations, 22 J. Legal Prof. 131, 139 (1998).
[11] Since the Board of Governors adopted rule 4-8.4(i), a myriad of law review articles and commentary on this subject has appeared exploring the regulation of attorney-client relations. See generally Awad, Attorney-Client Sexual Relations, 22 J. Legal Prof. at 134 n. 11. Although Awad and other commentators have advocated a complete ban, for a contrary view, see Mischler, Reconciling Rapture, Representation, and Responsibility: An Argument Against Per Se Bans on Attorney-Client Sex, 10 Geo. J. Legal Ethics 209 (1997).