PER CURIAM.
We review a referee’s report recommending that attorney Robert Edmond Sentón be found guilty of professional misconduct and disbarred from the practice of law. We have jurisdiction. See art. V, § 15, Fla. Const.
I. FACTS
The referee made the following findings of fact. In January 1995, a female client (“C.P.”) retained Robert Sentón to assist her in seeking unemployment benefits. Sentón later represented the same client in bankruptcy proceedings. During the course of his representation, Sentón pressured the client to engage in two sexual encounters. On December 6, 1995, Sen-ton arrived unannounced at his client’s house with a cooler of beer. Thinking that her attorney might have documents for her to sign, C.P. invited him inside. While the two drank beer, Sentón told C.P. that “friends needed to help each other out” and then began to massage her neck and shoulders, making increasingly sexual overtures toward her. Although she initially rejected his advances, she eventually relented, and the two engaged in sexual, intercourse. After Sentón left, C.P., collected evidence of the sexual encounter, including hair samples and seminal fluid. All of the items were placed in envelopes and then put into a bag and sealed with tape.
On February 14, 1996, the client met Sentón at his office in anticipation of a bankruptcy hearing. Sentón again insisted on sex. C.P. reluctantly agreed, but afterward she again collected evidence. A few weeks later, on March 8, C.P. filed a complaint with the Perry Police Department stating that Sentón twice sexually assaulted her. She provided the police with the evidence she had collected from both encounters.
Although no criminal charges were ultimately brought, on April 7, 2000, The Florida Bar filed a complaint against Sentón. Throughout- the proceedings, Sentón denied, in a statement under oath and otherwise, that he had ever engaged in sexual conduct with C.P. Because the client had providéd evidence- containing DNA to support her assertions, the Bar filed a motion to obtain a blood, saliva, or semen sample from Sentón, which the referee granted. Chris Larsen, a forensic DNA analyst, compared DNA found in sperm cells that were on the mini-pad submitted by C.P. with DNA found in Senton’s blood sample. According to Larsen, not only were the two DNA samples consistent with each other, but “the. likelihood of the genetic profile from the mini-pad being from somebody else would be 1.4 billion times more likely that it was the suspect and the *1000 victim rather than two unknown people from the population.”
Sentón was asked during the investigation how his client could have obtained a sample of his DNA. Sentón asserted that the client may have obtained his DNA from a personal towel that he kept at his office. At the final hearing, however, Sen-ton changed his explanation. According to Sentón, on the night of February 13, he stopped by his office with his girlfriend, so she could use the bathroom. Sentón stated that they engaged in sexual intercourse at his office, and he left a used condom in the wastebasket, implying that C.P. must have later scavenged through his trash can. Sentón alleged that he was no longer dating his girlfriend and could provide no information on her whereabouts.
The referee conducted the final hearing on January 13-14, 2003. After hearing all of the evidence, the referee found as follows:
Respondent has concocted testimony throughout these proceedings to justify his misconduct. The referee finds that the testimony of Respondent to be quite incredible and the testimony of [C.P] to be credible. Respondent was unable to satisfactorily explain the presence of his seminal fluids in the items collected by [C.P] then subsequently delivered to law enforcement and ultimately The Florida Bar. Respondent’s explanation that he had a sexual encounter in his office with a previously undisclosed woman named Ms. [X] did not hold up under cross examination. Ms. [X] had not been disclosed to the police handling the investigation of sexual battery charges against Respondent. Nor did Respondent disclose her existence to The Florida Bar in Respondent’s initial response, in his deposition, nor in Answers to Interrogatories prepared days before trial. Respondent did not have any idea where Ms. [X] lived, worked, or otherwise could be found.
[[Image here]]
Respondent exploited the lawyer-client relationship by coercing his client into engaging in sexual conduct on two occasions rather than suffer the implied threat of terminating his legal services at a time when she was most vulnerable.
Respondent took advantage of a weak-minded, vulnerable woman, who had a history of emotional and financial problems, for his own sexual satisfaction.
Based on the above factual findings, the referee recommended that the Court find Sentón guilty of violating the following Rules Regulating the Florida Bar: rule 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); rule 4-8.4(d) (engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice); and rule 4-8.4(i) (engaging in sexual conduct with a client that exploits the lawyer-client relationship). The referee found as mitigating circumstances that (1) Sentón did not have a prior disciplinary record, and (2) he had a good reputation. The referee found as aggravating circumstances that (1) Sentón had dishonest or selfish motive, (2) there was a pattern of misconduct, (3) Sentón engaged in bad faith obstruction of the disciplinary proceeding, (4) Sentón submitted false evidence or false statements, and (5) the victim was vulnerable. Based on these findings, the referee recommended that Sentón be disbarred and be ordered to pay the Bar’s costs, which amounted to $11,000.85. Sentón petitioned for review of the referee’s report on numerous bases,[1] including challenges *1001 to the findings of fact, the aggravating and mitigating circumstances found by the referee, and the recommended discipline.
II. ANALYSIS
A. Findings of Fact and Recommendations as to Guilt
We first address Senton’s challenge to the referee’s findings of fact. Sentón contends that the testimony from the Bar’s DNA expert, Chris Larsen, did not rise to the level of clear and convincing evidence. As an initial matter, Sentón has not set forth the appropriate standard of review. As this Court has repeatedly held:
A referee’s findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Absent a showing that the referee’s findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee.
Florida Bar v. Wohl, 842 So.2d 811, 814 (Fla.2003) (quoting Florida Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998)). Sentón has not met this burden.
Specifically, Sentón contends that Larsen’s testimony was unreliable because during cross-examination, Larsen admitted that although the sample he tested was a mixture of C.P.’s and Senton’s DNA, he was able to find a definite mixture on only four of the fourteen genes that he analyzed. Furthermore, he admitted that he found one gene which was not possessed by either C.P. or Sentón.
Sentón cannot meet his burden by merely pointing out contradictory or inconelu-sive testimony. See Florida Bar v. Vining, 761 .So.2d 1044, 1048 (Fla.2000) (“[A] party does not satisfy his or her burden of showing that a referee’s findings are clearly erroneous by simply pointing to the contradictory evidence where there is also competent, substantial evidence in the record that supports the referee’s findings.”). Moreover, as Larsen testified at the hearing, he had a difficult, time determining whether there was a mixture as to each of the genes because Sentón and C.P. shared many genetic markers. Despite these difficulties, Larsen concluded that the sample from Sentón was consistent with that on the evidence submitted by the client.
Moreover, even if this Court did not consider the DNA evidence, other testimony supports the referee’s conclusion that a sexual encounter occurred, most notably the testimony of C.P. herself. The referee listened to both C.P. and Sentón, finding C.P.’s version of the facts credible and Senton’s in credible. Because the referee is in the best position to judge the credibility of the witnesses, this Court defers to the referee’s resolution of the conflicting testimony. See Florida Bar v. Batista, 846 So.2d 479, 483 (Fla.2003); Florida Bar v. Fredericks, 731 So.2d 1249, 1251 (Fla.1999) (“The referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect.”). C.P.’s testimony provides sufficient support in the record that Sentón pressured her into sexual encounters on two occasions.
As competent, substantial evidence in the record supports the referee’s findings of fact, we adopt them. Moreover, as the referee’s findings of fact support his rec *1002 ommendations of guilt, we approve the referee’s recommendation that Sentón be found guilty of violating rules 4-8.4(c), 4-8.4(d), and 4-8.4(i) without further discussion.
B. Aggravation and Mitigation
Sentón also challenges the referee’s recommended sanction of disbarment, contesting whether the referee properly found various aggravating and mitigating circumstances. Again, in order to successfully challenge a referee’s findings of mitigation and aggravation, Sentón must show that such findings were clearly erroneous or without support in the record. See Florida Bar v. Arcia, 848 So.2d 296 (Fla.2003).
Sentón first asserts that the referee failed to properly consider as a mitigating circumstance that there was an unreasonable delay in the disciplinary proceedings. See generally Fla. Stds. Imposing Law. Sanes. 9.32(i) (providing that unreasonable delay can be a mitigating circumstance where “the respondent did not substantially contribute to the delay and provided further that the respondent has demonstrated specific prejudice resulting from the delay”). The record refutes this contention.
In this case, the Bar was aware of the underlying incidents by early 1996; however, the final hearing did not occur until January 2003. On July 2, 2001, the referee held a hearing on Senton’s Motion to Dismiss based on the delays that occurred. At this hearing, Senton’s counsel agreed he suggested that the Bar wait to complete its investigation until after the FDLE completed its own, in part based on Fifth Amendment concerns. After the FDLE investigation was complete and no criminal prosecution occurred, on April 7, 2000, the Bar filed its complaint. Thereafter, three lengthy delays occurred based on a dispute centered around the acquisition of DNA testing, two of which Sentón initiated. Although Sentón had the right to seek interlocutory review in this Court, he cannot now use his petition to claim an unreasonable delay in the proceedings. Sentón has failed to show that the referee’s findings on this issue were clearly erroneous.
Sentón next alleges that the referee erred in finding that the aggravating factor of bad faith obstruction applied. The referee found that both Standard 9.22(f) (submission of false evidence, false statements, or other deceptive practices during the disciplinary process) and Standard 9.22(e) (bad faith obstruction of disciplinary proceedings) applied. As to Standard 9.22(e), the referee found:
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency (Yes, Respondent has falsely denied his sexual conduct with a client, and fabricated evidence and testimony; he also failed to comply with the referee’s order to submit a blood sample until threatened with suspension by the Supreme Court).
The findings relating to Senton’s false denials and fabricated evidence support the finding of Standard 9.22(f) (false evidence and false statements), rather than Standard 9.22(e) (bad faith obstruction). Accordingly, the remaining evidence to support Standard 9.22(e) is Senton’s refusal to submit a blood sample until this Court approved the procedure. Sentón argues that the referee improperly found Senton’s failure to comply with the referee’s order as an aggravating factor under Standard 9.22(e) because he merely challenged the unprecedented process of an attorney in a grievance matter being ordered to submit a blood sample and that he complied after this Court issued its July 24 order requiring his compliance. We agree with Sentón *1003 and disapprove the finding of this aggravating circumstance.
C. Recommended Discipline
Senton’s final claim challenges the referee’s recommended discipline of disbarment. Because it is this Court’s ultimate responsibility to determine the appropriate sanctions, it has broader discretion when reviewing the referee’s recommended discipline. Florida Bar v. McFall, 863 So.2d 303, 307 (Fla.2003). Generally, “this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable-basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.” Id. Sentón contends that case law supports a lesser discipline, citing to Florida Bar v. Bryant, 813 So.2d 38 (Fla.2002) (imposing a one-year suspension on an attorney who agreed to his client’s suggestion to trade legal representation for sexual favors, among other violations).[2] Senton’s conduct, however, is far more egregious than the conduct in Bryant. This case is more analogous to Florida Bar v. Scott, 810 So.2d 893 (Fla.2002), where we disbarred an attorney for coercing a vulnerable, unwilling client to engage in sexual conduct. In this case, C.P. testified that she did not want to engage in sexual relations, but Sentón kept pressuring her until she felt she had no choice. As we have emphasized, “[e]ven the slightest hint of sexual coercion or intimidation directed at a client must be avoided at all costs.” Id. at 900 (quoting Florida Bar v. Samaha, 557 So.2d 1349, 1350 (Fla.1990)). Moreover, Sentón lied under oath and submitted false evidence to support his denials, which alone is sufficient to permit disbarment. See, e.g., Florida Bar v. de la Puente, 658 So.2d 65 (Fla.1995) (disbarring attorney for ten years for several instances of misconduct, including the making of a false statement to the tribunal during the disciplinary proceedings); Florida Bar v. Smiley, 622 So.2d 465, 467 (Fla.1993) (disbarring attorney and reasoning that a lawyer’s false testimony “defeats the very purpose of legal inquiry [and] ... ' is grounds for disbarment”); Florida Bar v. Rightmyer, 616 So.2d 953, 955 (Fla.1993) (disbarring attorney for perjury convictions among other violations, and observing that “[w]e can conceive of no ethical violations more damaging to the legal profession and process than lying under oath”).
The penalty of disbarment is supported by both case law, see Scott, 810 So.2d at 893; Smiley, 622 So.2d at 467, and the Florida Standards for Imposing Lawyer Sanctions.[3] Although we have disap *1004 proved one of the aggravating factors, four others remain, and Sentón presented minimal mitigation.[4] We therefore approve the referee’s recommendation that Sentón be disbarred and be required to pay the applicable costs of the proceeding.
Accordingly, Robert Edmond Sentón is hereby disbarred from the practice of law in the State of Florida. The disbarment will be effective thirty days from the filing of this opinion so that Sentón can close out his practice and protect the interests of existing clients. If Sentón notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Sentón shall accept no new business from the date this opinion is filed.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Robert Edmond Sentón in the amount of $11,000.85, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., with WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.

. We have considered Senton’s procedural challenge regarding the referee’s order com *1001 pelling Sentón to submit a DNA sample and find it to be without merits

. Sentón also relies on Office of Disciplinary Counsel v. Kafantaris, 99 Ohio St.3d 94, 789 N.E.2d 192 (2003) (holding that an attorney's dishonest statements regarding a sexual relationship with an employee warranted a one-year suspension). However, this Court need not turn to other jurisdictions to determine the appropriate discipline, especially where numerous opinions from this Court support disbarment.

. See Fla. Stds. Imposing Law. Sanes. 5.11(b) (finding disbarment appropriate where "a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft”); Fla. Stds. Imposing Law. Sanes. 5.11(f) (finding disbarment appropriate where "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice”); Fla. Stds. Imposing Law. Sanes. 6.11(a) (finding disbarment appropriate where a lawyer "with the intent to deceive the court, knowingly makes a false statement or submits a false document”).

. Specifically, Sentón submitted testimony from two judges and an affidavit from a legal aid organization to demonstrate that he had a good reputation in the Second Judicial Circuit, and demonstrated the absence of a prior disciplinary record.