810 So.2d 893 (2002)
THE FLORIDA BAR, Complainant, Cross-Respondent,
v.
John L. SCOTT, Respondent, Cross-Complainant.
Nos. SC96087, SC97020.
Supreme Court of Florida.
February 7, 2002.
*894 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Edward Iturralde, Bar Counsel, Tallahassee, FL, for Complainant, Cross-Respondent.
John L. Scott, pro se, Branford, FL, for Respondent, Cross-Complainant.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by attorney John L. Scott. We have jurisdiction. See art. V, § 15, Fla. Const.

FACTS
The Bar filed two complaints against attorney John L. Scott, the first alleging that Scott engaged in sexual misconduct with a client and then subsequently lied about the misconduct to the Bar (Case No. SC96087), the second alleging misconduct based on Scott's conviction for contempt of court (Case No. SC97020). After a final hearing was held in these cases, the referee *895 made the following pertinent findings of fact:
Case SC96087Count I. During September, 1997, a female client ("the client") met Scott for a consultation regarding an attempt by the Department of Children and Families ("the Department") to remove her son from her custody. Scott charged the client $25 for the consultation and advised her to consent to termination of her parental rights. The client signed a consent to termination of parental rights on September 30, 1997.
In October 1997, the client and her husband met with Scott regarding an attempt by the Department to terminate the client's parental rights to a second child. Scott stated that he would reduce his normal fee because he had another client with a similar case, but advised the client and her husband that he would need a $1000 retainer. The client and her husband obtained the money and returned to Scott's office that afternoon. Scott then asked the husband to leave the room so he could speak with the client alone. Scott proceeded to expose his penis to the client and fondle himself to erection. Scott asked the client "how bad do you want to win this case." She told Scott that she would pay Scott $20 to $25 a month for the rest of her life if she had to. Scott replied, "No, bitch. Come here." When the client got closer, Scott pulled her face down to his penis and ejaculated on her face and blouse. A Florida Department of Law Enforcement test on the blouse later confirmed that the stains on it were from semen.
That evening, the client ultimately related to her husband what had happened. The next day, the client and her husband contacted another attorney who referred them to the Suwannee County Sheriff's Office, which initiated a criminal investigation against Scott. The client agreed to wear a voice transmitter for two future visits to Scott's office. The referee concluded that at the first visit on October 28, 1997, the taped conversation implied that there had been oral sex between Scott and the client in the past and that, in the client's mind, the act had resulted in a lower fee. The referee found that at this visit, Scott asked the client if she wanted to perform oral sex on him.[1] At the October 31 visit, the referee found that Scott was ambiguous as to whether his reduced fee was connected with the client performing oral sex on him at that meeting. However, Scott eventually asked the client if she was "ready to do what you said you wanted to, come down here?" and proceeded to make further sexual proposals to her. Later, still on tape, the client who is obviously distraught confirms to her husband in their vehicle that Scott had unzipped his pants, pulled out his penis, and ejaculated.
Scott was subsequently arrested and charged with solicitation of prostitution. Scott disposed of the charges by entering into a pretrial diversion program agreement with the State Attorney's Office. In the deferred prosecution agreement, Scott admitted that "discussions of a sexual nature took place between him and the victim in regard to the legal fees to be charged by John Scott, the Defendant."
Based on Count I, the referee found Scott guilty of violating Rules Regulating the Florida Bar 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects), 4-8.4(d) (engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice) and 4-8.4(i) (engaging in sexual conduct with a client that exploits the lawyer-client relationship).
*896 Count II. On January 15, 1999, at the Bar's hearing to determine probable cause, Scott denied that he ever asked or tried to entice the client to perform a sexual act with him, or expressed or indicated a willingness to engage in a sexual act with her on either October 28 or October 31, 1997. On February 19, 1999, Scott had the opportunity to recant his prior testimony when he gave sworn testimony before The Florida Bar's grievance committee. Under oath, he maintained that he never solicited the client for sex and never agreed or indicated a willingness to engage in sex with her during the October visits. In his report the referee concludes that "Scott's statements and testimony in this regard were false and misleading."
Based on Count II, the referee found Scott guilty of violating rules 4-8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary proceeding), and 4-8.4(c)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).
Case SC97020On February 8, 1999, Scott participated in jury selection in the trial of a criminal case in Suwannee County. The court advised the jury, counsel for the State, Scott, and his client to return to court on February 10 to commence the trial. On February 9, 1999, Scott had his secretary call the presiding judge's judicial assistant and state that he (Scott) was having chest pains and was going to seek medical attention, and that there was a problem with the trial going forward. Scott called his doctor's office and was told to go to an emergency room immediately. Instead, Scott went to Jacksonville and participated in settlement negotiations for another client. After the meeting, he went to an emergency room in Jacksonville, but decided not to stay. He neither sought nor received any medical attention on February 9. On February 10, Scott called his secretary and was told that the court had not continued the trial. Scott told his secretary to contact the court and advise that he was having a heart attack and was seeking medical attention. The secretary did so, but Scott made no effort to file a motion for continuance or other pleading on February 9 or 10, or to personally contact either the judge or opposing counsel by phone, fax, or e-mail.
At 9 a.m. on February 10, all parties were in the courtroom but Scott. At 10:30 a.m., Scott arrived at his doctor's office and was sent to an emergency room. He underwent a series of tests and the hospital's discharge diagnosis indicated, "Gastroesophageal reflux disease.... Chest pain, presumably gastrointestinal origin[, and] alcoholic hepatitis. Advised the patient to quit drinking." On February 12, the trial court issued a rule to show cause, ordering Scott to appear before the Court on February 22. On February 23, 1999, the trial court entered a written order of criminal contempt, ordering Scott to pay $1000 and suspending a thirty-day jail sentence conditioned upon payment of the fine. Scott filed a notice of appeal of the order, but did not pay the filing fee or file a brief. He ultimately abandoned the appeal.
As to the above conduct, the referee found Scott guilty of violating rules 4-3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and 4-8.4(d) (engaging in conduct in connection with the practice of law that is prejudicial to the administration of justice).
In recommending discipline, the referee noted that Scott is fifty-three years old and has no prior discipline except for an admonishment for minor misconduct in *897 1992. In further mitigation, the referee found that Scott has a good reputation for honesty and veracity in the community in which he works, and that he is an alcoholic. The referee notes that Scott's drinking increased when his wife died and during the pertinent time periods surrounding Scott's misconduct he was consuming up to a quart of whiskey a day. The referee found that Scott has admitted his problem, sought treatment, and is currently participating in Alcoholics Anonymous and has progressed through the twelve-step program. Finally, the referee found that Scott has resolved the criminal and civil cases against him that resulted from his conduct with the client. As to the contempt matter, the referee noted that Scott's hearing was held in a crowded courtroom in front of his peers and he has paid his $1000 fine.
In aggravation, the referee found that Scott fails to acknowledge that he did anything wrong in the contempt proceeding: "He does not seem to understand that it was not so much a question of whether he was ill on the 10th or whether he had a good reason for not appearing for trial, as it was the complete lack of courtesy, respect and responsibility displayed and his cavalier and presumptive approach to the situation." The referee notes that Scott's reaction has consistently been "resentment at having his integrity questioned, at having the contempt hearing held in open court, rather than in chambers." As to Scott's sexual misconduct, the referee cited in aggravation the vulnerability of the client, finding that she was an individual faced with the extremely stressful situation of possible termination of parental rights. The referee found that "Scott's graphic sexual comments and actions show a callous disregard for his client's best interests, and the vilest exploitation of her vulnerability." The referee ultimately concluded that "[t]he only logical motivation for his action was either a desire for perverse sexual gratification or the sadistic exercise of power and control over his client/victim." The referee recommended a suspension for eighteen months and thereafter until rehabilitation is proven, followed by two years' probation. The referee also recommended that Scott pay the Bar's costs plus accrued interest.
The Bar petitioned for review, challenging the referee's recommended discipline. Scott cross-petitioned, challenging multiple aspects of the referee's report. On July 3, 2001, this Court issued an order suspending Scott from the practice of law, effective thirty days from the date of the order. Oral argument was held in this case on October 2, 2001.

ANALYSIS
In order to evaluate the Bar's challenge to the referee's recommended discipline, we must first consider Scott's challenges to the referee's findings of fact and conclusions as to guilt.
A referee's findings of fact are presumed correct and will not be overturned unless they are "clearly erroneous or lacking in evidentiary support." Florida Bar v. Hayden, 583 So.2d 1016, 1017 (Fla. 1991); see also Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998) (stating that where such findings are supported by competent substantial evidence, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee").
The determinative issue in case SC96087 is whether Scott engaged in sexual acts with the client in his office on the dates in question. At the hearing before the referee, the client gave graphic, disturbing testimony as to how Scott grabbed her and ejaculated in her face. Further, at the final hearing, the Bar played tapes of the conversation that the client had with *898 Scott when she attended the October 28 and 31 meetings wearing a recording device. On these tapes, the client asks Scott if he would like her to perform oral sex on him and he answers in the affirmative. We conclude that there is competent, substantial evidence in the record to support the referee's finding that Scott engaged in sexual activity with the client.
Scott's claim that the referee ignored his testimony and that of his witnesses is without merit. Although Scott points to evidence in the record that is contrary to the client's testimony, he "does not meet the burden of showing that a referee's findings are erroneous by simply pointing to contradictory evidence where there is also competent, substantial evidence in the record that supports the referee's findings." See Florida Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997).
As to the contempt matter, Scott claims that he did not intend to miss the court hearing and that medical circumstances dictated his absence. At the hearing on the rule to show cause, the following exchange occurred between the trial judge and Scott:
COURT: Well, [your secretary] said that you were saying that you were ill and you were going to the emergency room and into the hospital. But you didn't do that, and you didn't file anything with this court asking for any type of continuance.
SCOTT: Well, I didn't have time to do that, Judge, and I was too ill to do that. I did ask her to call your office and explain the situation to you.
The order holding Scott in criminal contempt notes that Scott's medical records from his visit to the emergency room on February 10 provided the following statement as to Scott's condition upon his arrival: "General appearance: This is a pleasant middle aged gentleman in no apparent distress. Currently with no complaints."[2]
The above exhibits and the transcript of the final hearing in this case demonstrate that Scott was "too ill" to file a motion for continuance of trial or attend the February 10 trial, but was well enough to drive an extended distance to attend a settlement conference in Jacksonville and well enough to decide to go home when the emergency room in Jacksonville was too busy. Further, the medical records cited in the order of contempt indicate that Scott was not in apparent physical distress when he appeared at the Gainesville emergency room. We conclude that there is competent, substantial evidence in the record to support the conclusion that Scott wilfully disregarded his obligation to attend the February 10 hearing and failed to file a motion for continuance. Therefore, we approve the referee's findings of fact.
Scott's challenges to the referee's rule violations are primarily based on his factual challenges. Scott argues that since he did not engage in sexual conduct with the client, he could not have testified falsely and that therefore, he is not guilty of the rule violations in case SC96087. Similarly, he argues that since he did not intentionally miss the hearing, he is not guilty of any violations in case SC97020. Since we have found competent, substantial evidence to support all of the referee's findings of fact, we approve all of the referee's recommended rule violations. However, rather than discussing each rule violation, we focus on the rule 4-3.4(c), 4-8.4(c), and 4-8.4(d) violations found by the referee in the contempt case.
*899 In Florida Bar v. Kirkpatrick, 567 So.2d 1377 (Fla.1990), an attorney charged with resisting arrest without violence and not having a valid automobile tag failed to appear in court on three separate occasions. In finding that the attorney violated rule 4-3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists), this Court approved the portion of the referee's report stating that the attorney failed to "recognize that the privilege of being an attorney should have caused him, more than a lay person, to show respect and deference to the judicial system." Id. at 1378. See also In re Atanga, 636 N.E.2d 1253 (Ind.1994) (attorney who intentionally failed to attend hearing found guilty of disciplinary rule prohibiting attorneys from knowingly disobeying an obligation under the rules of a tribunal). In light of Scott's intentional failure to file a motion for continuance and failure to attend the trial, we approve the referee's finding of a rule 4-3.4(c) violation.
Further, this Court has concluded that making a misrepresentation to a tribunal regarding an inability to attend a hearing constitutes a violation of rule 4-8.4(c) (a lawyer shall not engage in conduct involving misrepresentation, fraud, deceit, or dishonesty). In Florida Bar v. Lathe, 774 So.2d 675 (Fla.2000), an attorney informed a judge that the reason his client failed to appear at a hearing was because the attorney had been ordered to appear in another case. The judge ultimately determined that the attorney's statement was false. Id. at 676. This Court approved the referee's unchallenged recommendation that Lathe be found guilty of violating rule 4-8.4(c). Id. at 677. In the instant case, the referee found that Scott had his secretary call the judge's judicial assistant and inform her that Scott was having chest pains and that there was a problem with the trial going forward. In that Scott then proceeded to drive to Jacksonville for a settlement conference and subsequently decided not to remain in an emergency room because it was too busy, we conclude that Scott's statements were dishonest. Accordingly, we approve the referee's finding of a rule 4-8.4(c) violation.
Finally, we conclude that Scott's conduct was prejudicial to the administration of justice. Scott's conduct disrupted and stalled the progress of a criminal trial. We therefore approve the referee's finding of a rule 4-8.4(d) violation. See also Atanga, 636 N.E.2d at 1257 ("The failure of Respondent to attend the above-noted proceeding necessitated the rescheduling of the cases. His deliberate acts constituted a violation of [the rule prohibiting attorneys engaging in conduct prejudicial to the administration of justice].").
Finally, both Scott and the Bar challenge the referee's recommendation of an eighteen-month suspension. The Bar argues that disbarment is the appropriate discipline. On the other hand, Scott argues that the referee's recommendation is excessive and suggests a sanction that would require him to take one or two cases on a no-fee basis per month from either the Public Defender's Office or Three Rivers Legal Services, Inc.
In reviewing a referee's recommendation of discipline, this Court's "scope of review is somewhat broader than that afforded to findings of facts because, ultimately, it is [the Court's] responsibility to order an appropriate punishment." Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). However, generally speaking this Court "will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). Because we conclude that the referee's recommendation as to discipline for Scott's sexual misconduct in case SC96087 does *900 not have a reasonable basis in existing caselaw and that disbarment is the appropriate sanction for this misconduct, we do not address what is the appropriate sanction for Scott's lack of candor in case SC96087 and his failure to attend the February 10, 1999, trial in case SC97020.
This Court has held that "[e]ven the slightest hint of sexual coercion or intimidation directed at a client must be avoided at all costs." Florida Bar v. Samaha, 557 So.2d 1349, 1350 (Fla.1990). In Florida Bar v. McHenry, 605 So.2d 459, 460 (Fla. 1992), this Court disbarred an attorney with two prior reprimands who improperly touched one client, explaining to her that he "as her attorney, [needed to] be familiar with the precise nature of her injuries" and then "returned to his desk, sat down, and began making motions with his arm and body consistent with the act of masturbation." A second client, in a separate incident, observed the attorney masturbating during a meeting. Id. This Court stated the following regarding the attorney's behavior:
[H]is behavior toward two of his clients in the two separate incidents at issue in this case demonstrates severe moral turpitude, and his character and conduct are wholly inconsistent with approved professional standards. Under no circumstances should clients be exposed to the type of conduct exhibited by McHenry. It breeds contempt and distrust of lawyers to permit a lawyer involved in such conduct to remain a lawyer.
Id. at 461 (citation omitted).
We conclude that Scott's misconduct in the instant case is more severe than that which occurred in McHenry. While McHenry masturbated in the presence of his client, there is no evidence that he attempted to coerce a vulnerable, unwilling client to engage in sexual conduct with him in an exchange for a reduction in his fees. Further, there is no evidence that he ejaculated on either of the clients. There is no evidence that McHenry addressed either of these clients by a derogatory name. All of the aforementioned acts were found by the referee to have occurred in the instant case. Scott's misconduct in the instant case "breeds contempt and distrust of lawyers" and, therefore, we conclude disbarment is the appropriate sanction. See McHenry, 605 So.2d at 461; see also State ex rel. Nebraska State Bar Ass'n v. Denton, 258 Neb. 600, 604 N.W.2d 832, (2000) (attorney disbarred for engaging in sexual relationship with vulnerable client, then failing to call witnesses favorable to client in divorce proceedings because those witnesses knew about the sexual relationship).
Accordingly, John L. Scott is hereby disbarred from the practice of law in the State of Florida. In this Court's July 3, 2001, order suspending Scott, this Court afforded Scott thirty days to close out his practice and protect the interests of existing clients, and further ordered that Scott shall accept no new business from the date the order was issued. Accordingly, Scott's disbarment in the instant case shall take effect immediately. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from John L. Scott in the amount of $11,145.33, pursuant to the conditions provided in the referee's report, for which sum let execution issue.[3]
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] We decline to republish the exact words spoken by Scott.
[2] The order of contempt further notes that Scott's medical records indicated he exhibited symptoms of "mild alcoholic hepatitis."
[3] We find no merit to Scott's challenge to the referee's award of costs to the Bar.