PER CURIAM.
 

 We have for review referees’ reports from three Bar discipline cases recommending that respondent, James Harvey Tipler, be found guilty of various acts of professional misconduct and subjected to various sanctions, including disbarment. We have jurisdiction.
 
 See
 
 art. V, § 15, Fla. Const. In an order previously entered in
 
 Florida Bar v. Tipler,
 
 No. SC06-1775, 999 So.2d 646, 2008 WL 5378150 (Fla. Dec. 22, 2008), we disbarred Tipler and noted that this opinion was to follow. We now consolidate that case with
 
 Florida Bar v. Tipler,
 
 No. SC03-149, and
 
 Florida Bar v. Tipler,
 
 No. SC05-1014, for purposes of review. For the reasons expressed below, Tipler is disbarred.
 

 FACTS
 

 Case No. SC03-H9
 

 In Case No. SC03-149, the referee found that Tipler represented a client, an eighteen-year-old mother, in Bay County, Florida, on a charge of aggravated assault. Tipler charged his client a fee of $2,300
 
 *1112
 
 and entered into a fee agreement with her that allowed a “credit of $200 for each time she engaged in sex with Respondent” and a “$400 credit if she arranged for other females to have sex with him.” For his misdeeds, Tipler was charged with racketeering and four counts of prostitution. He ultimately pleaded guilty to one count of solicitation of prostitution.
 

 The Florida Bar filed a complaint against Tipler, and the matter was stayed pending the resolution of a disciplinary case in Alabama arising out of the same incident. Tipler admitted that the agreement existed and that he engaged in sex with his client and another woman in exchange for credits toward the amount the client owed Tipler in attorney fees. Tipler also admitted that his actions were morally and ethically wrong. After the disciplinary case worked its way through the three levels in the Alabama disciplinary system, the Supreme Court of Alabama suspended Tipler for fifteen months. Tipler failed to file a copy of the suspension order with this Court within thirty days of the effective date of the suspension. Nevertheless, after the matter in Alabama was completed, The Florida Bar filed an amended complaint and moved for summary judgment. The referee granted summary judgment in favor of the Bar.
 

 Based on the foregoing, the referee recommended that Tipler be found guilty of violating Rules Regulating the Florida Bar 3-4.3 (“The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.”); 3-4.4 (indicating that criminal misconduct is a cause for discipline);
 
 8-7.2(l
 
 )(1) (“A member of The Florida Bar who ... has been ... suspended from the practice of law by a court or other authorized disciplinary agency of another state ... shall within 30 days ... [notify] the Supreme Court of Florida and the executive director of The Florida Bar .... ”); 4-1.2(d) (“A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent.”); 4-1.5(a) (“An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost ....”); 4-8.4(a) (“A lawyer shall not ... violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.”); 4-8.4(b) (“A lawyer shall not ... commit a criminal act that reflects adversely on the lawyers honesty, trustworthiness, or fitness as a lawyer in other respects.”); 4-8.4(d) (“A lawyer shall not ... engage in conduct ... that is prejudicial to the administration of justice _”); and 4-8.4(i) (“A lawyer shall not ... engage in sexual conduct with a client that exploits ... the lawyer-client relationship.... ”).
 

 The referee found the following aggravating factors: (1) Tipler had a prior disciplinary history; (2) his motives were dishonest and selfish; (3) he exhibited a pattern of misconduct; (4) he committed multiple offenses; (5) the victims were vulnerable; and (6) he had substantial experience in the practice of law.
 

 In mitigation, the referee found that Ti-pler (1) had personal and emotional problems; (2) had a physical or mental impairment or disability; (3) received only minimal penalties or sanctions for being found guilty of a misdemeanor; and (4) expressed remorse for his actions.
 

 For Tipler’s misconduct in Case No. SC03-149, the referee recommended that Tipler be suspended for eighteen months, placed on probation for two years following
 
 *1113
 
 reinstatement, and required to contact Florida Lawyers Assistance, Inc. (FLA), within thirty days of the final judgment in this case and sign a three-year FLA rehabilitation contract under the terms and conditions recommended by FLA. The referee further recommended that Tipler be charged with the Bar’s costs in the amount of $3,734.50.
 

 Case No. SC05-10H
 

 In Case No. SC05-1014, the referee found that in Alabama, Tipler represented a plaintiff in a medical malpractice case arising out of a patient’s death. Tipler attempted to submit into evidence a videotape depicting the patient on the day before the surgery that allegedly resulted in his death. To authenticate the tape, Ti-pler questioned the patient’s son as to whether the tape was accurate. The videotape Tipler attempted to submit was edited from the original version to delete or move scenes that would have been harmful to the plaintiffs case. Further, the patient’s son had never viewed the edited tape and, thus, unknowingly gave false answers concerning the authenticity of the tape during Tipler’s questioning.
 

 Upon objection by the defense, the trial court conducted an inquiry and disallowed the entry of either the original or edited tape. Additionally, based on Tipler’s answers to questions posed to him during the inquiry, the trial court held Tipler in criminal contempt after a show-cause hearing. A grand jury indicted Tipler for perjury, a first-degree felony. Tipler eventually pleaded guilty to interference with judicial proceedings, a misdemeanor.
 

 After a successful first appeal by Tipler within the Alabama disciplinary system, the Supreme Court of Alabama ultimately determined that Tipler’s conviction was a “serious crime” and reversed and remanded the case for further proceedings.
 
 See Ala. State Bar v. Tipler,
 
 904 So.2d 1237 (Ala.2004). Thereafter, Tipler was suspended for 120 days in Alabama. Tipler failed to file a copy of the suspension order with this Court within thirty days of the effective date of the Alabama suspension. Nevertheless, the Bar filed a complaint against Tipler. Tipler did not file an answer to the complaint or respond to the Bar’s requests for admission. The Bar moved for summary judgment, and Tipler eventually consented to summary judgment on guilt. Accordingly, summary judgment was granted on all the factual allegations and rule violations.
 

 In addition to his Alabama disciplinary proceedings, Tipler has disciplinary proceedings pending in California. Tipler testified before the referee that a stipulation submitted to the referee and entered into evidence was a final stipulation with the State Bar of California. In fact, the stipulation was not final. Rather, Tipler was referred to California’s Alternate Discipline Program (ADP) by the disciplinary judge. The disciplinary judge noted that if Tipler was not accepted into the ADP, the stipulation would be final, subject to the approval of the California Supreme Court. At the time of the proceedings before the referee, the California case was pending before the ADP judge. Hence, there was not yet a final disposition in the California proceedings.
 

 Based on the foregoing, the referee recommended that Tipler be found guilty of violating Rules Regulating the Florida Bar 3-4.3 (“The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.”); 3-4.4 (indicating that criminal misconduct is a cause for discipline); 3-7.2(Z )(1) (“[A] member of The Florida
 
 *1114
 
 Bar who ... has been ... suspended from the practice of law by a court or other authorized disciplinary agency of another state ... shall within thirty days ..". [notify] the Supreme Court of Florida and the executive director of The Florida Bar .... ”); 4-3.3(a) (“A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal.”); 4-3.4(a)-(b) (lawyer shall not unlawfully alter or conceal documents or fabricate evidence); 4-8.4(b) (“A lawyer shall not ... commit a criminal act that reflects adversely on the lawyers honesty, trustworthiness, or fitness as a lawyer in other respects.”); 4-8.4(c) (“A lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation .... ”); and 4-8.4(d) (“A lawyer shall not ... engage in conduct ... that is prejudicial to the administration of justice.... ”).
 

 The referee found the following aggravating factors: (1) Tipler had a prior disciplinary history; (2) his motives were dishonest and selfish; (3) he had substantial experience in the practice of law; (4) he exhibited a pattern of misconduct; (5) he committed multiple offenses; and (6) he submitted false evidence during the disciplinary process. The referee found the following mitigating factors: (1) minimal penalties or sanctions were imposed on Tipler for being found in criminal contempt and being convicted of a misdemeanor conviction; and (2) Tipler expressed remorse for his conduct.
 

 For Tipler’s misconduct in Case No. SC05-1014, the referee recommended that the Court suspend Tipler for three years and that he be taxed the Bar’s costs in the amount of $2,212.32.
 

 Case No. SC06-1775
 

 On August 31, 2006, the Bar filed its complaint against Tipler in Case No. SC06-1775. The Bar mailed its complaint by certified mail, return receipt requested, to Tipler at his record Bar address; the complaint was returned as unclaimed, prompting the Bar to mail Tipler a second copy of the complaint by regular mail. The second copy was not returned.
 

 Tipler failed to answer the complaint. After a referee was appointed, Tipler filed a motion to disqualify the referee on November 21, 2006, which was denied on November 29, 2006. The Bar filed a notice of application for default on February 8, 2007, and a motion for default on March 7, 2007. The referee entered a default against Tipler on March 12, 2007. After Tipler unsuccessfully moved to overturn the default, a final sanction hearing was held on September 26, 2007. At the hearing, Tipler did not present any evidence in mitigation.
 

 In Case No. SC06-1775, the referee found seven instances of misconduct, wherein Tipler misused over $57,000 in funds received from various clients and failed to diligently prosecute the clients’ cases or even communicate with the clients. The case types ranged from dissolution of marriage to real estate to copyright infringement. In addition, Ti-pler secured fees based on intentional misrepresentation and fraud. In most of the cases, Tipler charged an excessive fee, failed to comply with the Bar rules governing trust accounts, and failed to protect the clients’ interests by refunding unearned fees. Further, Tipler committed conversion and criminal theft in many of the instances. In one instance, Tipler labored under a conflict of interest. In some instances, Tipler failed to respond to inquiry letters sent by the Bar to his record address.
 

 For example, in one of the charged cases, two clients hired Tipler to represent them in filing two separate personal injury claims for two different accidents. Tipler filed two separate personal injury complaints on behalf of the clients. Tipler failed to provide a copy of the signed
 
 *1115
 
 contingency fee agreement and statement of clients’ rights to the clients in either lawsuit. After discovery, both lawsuits proceeded to a settlement in which two checks for $4,750 were issued, payable to the clients and Tipler.
 

 The clients came to Tipler’s office to sign the checks; Tipler told them he would provide them with copies of the checks and the written closing statements the next business day. The settlement funds were paid out after the checks were endorsed. The checks were cashed by Tipler, but the funds were not deposited into Tipler’s trust account.
 

 There were outstanding medical bills associated with the accidents totaling approximately $2,500. Tipler paid the clients what he alleged to be the balance of the settlement funds after his fees and the medical bills were paid. However, Tipler paid none of the medical bills. From November 2004 through March 2005, the clients attempted to communicate on numerous occasions with Tipler, who told them that he would provide them with a copy of the closing statements and also copies of the checks that he had mailed to the medical providers to verify payment of the bills. Despite numerous requests from his clients, however, Tipler did not provide the clients with a written closing statement for either of the personal injury cases or copies of the checks for the alleged medical payments. Due to Tipler’s failure to pay a $1,924 hospital bill, one of the clients was sued and a judgment entered against him for $2,481.15 in February 2005. Although a large sum of money was not involved, this particular instance demonstrates Tipler’s complete lack of probity.
 

 Additionally, to exacerbate matters, Case No. SC06-1775 also includes an instance in which Tipler attempted to defraud his creditors with respect to a $487,714.81 judgment before a federal bankruptcy court. The bankruptcy court specifically found that Tipler’s actions indicated that he intended to hinder, delay, or defraud his creditors, and that his failure to file income tax returns for four years, as well as his failure to maintain and preserve adequate records, made it impossible for the creditors to ascertain Tipler’s true financial condition. In particular, the bankruptcy court found that Tipler “made numerous false and conflicting statements under oath” and “knowingly and fraudulently made a false oath or account in connection with his bankruptcy case.”
 
 In re Tipler,
 
 360 B.R. 333, 354-55 (Bankr.N.D.Fla.2005).
 

 For the foregoing reasons, the referee recommended that Tipler be found guilty of violating Rules Regulating the Florida Bar 3-4.3 (“The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.”) (two counts); 4-1.2(a) (“[A] lawyer shall abide by a clients decisions concerning the objectives of representation ....”) (two counts); 4-1.3 (“A lawyer shall act with reasonable diligence and promptness in representing a client.”) (six counts); 4-1.4 (“A lawyer shall ... keep [a] client reasonably informed about the status of the matter [and] promptly comply with reasonable requests for information.”) (five counts); 4-1.5(a) (“An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost -”) (six counts); 4-1.7 (prohibiting representation of adverse interests); 4-1.15 (“A lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts.”) (two counts); 4-1.16(d) (“Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interest ....”) (six
 
 *1116
 
 counts); 4-8.4(a) (“A lawyer shall not ... violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.”); 4-8.4(b) (“A lawyer shall not ... commit a criminal act that reflects adversely on the lawyers honesty, trustworthiness, or fitness as a lawyer in other respects.”) (three counts); 4-8.4(c) (“A lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ....”) (three counts); 4-8.4(d) (“A lawyer shall not ... engage in conduct ... that is prejudicial to the administration of justice ....”) (four counts); 4-8.4(g)(l) (“A lawyer shall not ... fail to respond in writing to any ... initial written investigative inquiry by bar counsel [or a disciplinary agency].”) (six counts); 4-8.4(g)(2) (“A lawyer shall not ... fail to respond [to] any follow-up written investigative inquiries by bar counsel [or a disciplinary agency].”) (two counts); 5-1.1(a) (“A lawyer shall hold in trust funds and property of clients or third persons that are in a lawyer’s possession in connection with representation.”) (two counts); 5-1.1(b) (“Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose.”) (four counts); 5-l.l(e) (“[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.”) (three counts); and 5-1.1(f) (requiring a lawyer to treat disputed funds as trust property) (two counts).
 

 The referee found the following aggravating factors: (1) Tipler had a prior disciplinary history; (2) his motives were dishonest and selfish; (3) he exhibited a pattern of misconduct; (4) he committed multiple offenses; (5) his victims were vulnerable; (6) he had substantial experience in the practice of law; and (7) he was indifferent to making restitution. The referee found no mitigating factors.
 

 For his misconduct in Case No. SC06-1775, the referee recommended that Tipler be disbarred, ordered to pay restitution, and taxed with the Bar’s costs. As stated above, we have already issued an order approving in its entirety the referee’s report in Case No. SC06-1775.
 
 See Fla. Bar v. Tipler,
 
 999 So.2d 646 (Fla.2008) (table).
 

 ANALYSIS
 

 In all three cases, Tipler petitioned for review of the referees’ reports, challenging their findings and recommendations on due process grounds; he also challenged the referees’ recommendations as to discipline.
 

 Tipler primarily argues that he was denied due process in all three of the proceedings against him. None of his due process arguments have merit. With regard to Case No. SC03-149, Tipler argues that the findings in the Alabama disciplinary system should not be considered conclusive proof of guilt because the Alabama proceedings were defective in that he was not allowed to call witnesses, and since the incidents transpired in Florida, the disciplinary proceedings should have been held in Florida.
 
 [1]
 
 Accordingly, Tipler argues
 
 *1117
 
 that the referee should not have granted summary judgment in Case No. SC03-149.
 

 Rule 3-4.6(a) provides in pertinent part:
 
 [2]
 

 A final adjudication in a disciplinary proceeding by a court or other authorized disciplinary agency of another jurisdiction, state or federal, that an attorney licensed to practice in that jurisdiction is guilty of misconduct justifying disciplinary action shall be considered as conclusive proof of such misconduct in a disciplinary proceeding under this rule.
 

 Based on the rule, the Florida referee properly relied on the records of the Alabama disciplinary proceedings.
 
 See Fla. Bar v. Wilkes,
 
 179 So.2d 193 (Fla.1965);
 
 see also Fla. Bar v. Kandekore,
 
 766 So.2d 1004, 1007 (Fla.2000). However, as stated in
 
 Wilkes,
 
 there is a limited exception to the rule:
 

 [Rjight and justice require that when the accused attorney shows that the proceeding in the foreign state was so deficient or lacking in notice or opportunity to be heard, that there was such a paucity of proof, or that there was some other grave reason which would make it unjust to accept the foreign judgment as conclusive proof of guilt of the misconduct involved Florida can elect not to be bound thereby....
 
 [T]he burden of showing why a foreign judgment should not operate as conclusive proof of guilt in a Florida disciplinary proceeding is on the accused attorney.
 

 179 So.2d at 198 (emphasis added). Ti-pler’s claim that the Alabama proceedings were deficient in due process fails because (1) he was afforded a full opportunity to conduct discovery; (2) he was afforded a full opportunity to confront witnesses; and (3) he was represented by competent counsel. Indeed, the very fact that Tipler was afforded two appeals to contest his discipline in Alabama negates his claim that he was denied due process there. Further, Tipler’s argument that the case should have been litigated in Florida is disingenuous. Tipler failed to object to any of six motions for extension of time to file the referee’s report filed by Bar counsel pending the resolution of the Alabama proceedings. Moreover, the record of the Alabama proceedings before the referee supported the Bar’s position. Finally, Ti-pler failed to present any documents to support his position. The referee correctly granted summary judgment and used the Alabama findings to support a conclusion that Tipler is guilty of the rule violations charged.
 
 See Fla. Bar v. Mogil,
 
 763 So.2d 303, 307 (Fla.2000) (“It is not enough for the [party opposing summary judgment] merely to assert that an issue does exist.” (emphasis omitted) (quoting
 
 Landers v. Milton,
 
 370 So.2d 368, 370 (Fla.1979))).
 
 [3]
 

 With regard to Cases No. SC05-1014 and SC06-1775, Tipler argues that he received inadequate notice and opportunity to be heard, in violation of his right to due
 
 *1118
 
 process. Due process is satisfied in Bar disciplinary proceedings where the attorney is served with notice of the Bar’s charges and is afforded an opportunity in the disciplinary hearing to be heard and defend himself.
 
 Fla. Bar v. Committe,
 
 916 So.2d 741, 745 (Fla.2005). Further, this Court has defined due process in this regard as follows:
 

 [D]ue process requires the giving of reasonable notice and such shall be effective by the service of the complaint upon the respondent by mailing a copy thereof by registered or certified mail return receipt requested to the last-known address of the respondent according to the records of The Florida Bar or such later address as may be known to the person effecting the service.
 

 R. Regulating Fla. Bar 3-7.11(c).
 

 As to Case No. SC05-1014, Tipler argues that although his counsel for Case No. SC03-149 was served with papers for Case No. SC05-1014, she was not his counsel for the latter case, Tipler was never personally served, and he therefore was denied an opportunity to answer the charges against him. Tipler’s argument is disingenuous. Five days before the scheduled hearing on summary judgment, Ti-pler’s counsel filed a “Motion for Order Allowing Withdrawal of Counsel” in which she stated that she did not intend to make an appearance in the matter. A letter attached to the motion to withdraw indicates that months earlier, Tipler’s counsel informed Bar counsel that she had forwarded the documents to Tipler and requested that he accept service. Hence, Tipler actually received the documents filed in the case. Additionally, Tipler faxed a letter to the referee stating that his counsel was representing him in various Bar matters and was withdrawing from representation in Case No. SC05-1014. It is impossible for counsel to withdraw from representation in a matter in which she did not represent Tipler. Further, in the same letter, Tipler consented to the entry of a summary judgment in that case. Tipler was represented by counsel, who was served with copies of all filings, actually received notice, had an opportunity to respond, and, in fact, consented to summary judgment. The process afforded him in Case No. SC05-1014 was sufficient.
 

 As to Case No. SC06-1775, Tipler argues that the referee should not have granted default judgment because (1) Ti-pler was not properly served with a copy of the Bar’s formal complaint; and (2) justice favors deciding issues on the merits rather than by default. Tipler first argues that the practice of law is akin to a property right and comes with the same due process protections applicable to deprivation of property claims. Tipler compares the “right” to practice law to a parent’s fundamental right to raise a child. Tipler is incorrect. The Bar rules, as adopted by this Court, clearly state that “[a] license to practice law confers no vested right to the holder thereof but is a conditional privilege that is revocable for cause.” R. Regulating Fla. Bar 3-1.1.
 

 The Bar mailed its complaint by certified mail, return receipt requested, to Tipler at his record Bar address. This satisfied due process. Although not required to do so, the Bar further satisfied due process by mailing another copy of the complaint to Tipler after the first one was returned as unclaimed.
 

 Tipler misperceives our holding in
 
 Florida Bar v. Porter,
 
 684 So.2d 810 (Fla.1996). He argues that pursuant to
 
 Porter,
 
 he was entitled as a matter of due process to an evidentiary hearing to determine whether he knowingly ignored his mail. However, in
 
 Porter,
 
 we did not state that an eviden-tiary hearing was ever held. In fact, the
 
 *1119
 
 opinion recites facts remarkably similar to the case at bar:
 

 The Bar then filed a formal complaint against Porter and sent this complaint by certified mail to Porter’s record Bar address on January 30, 1996. After three attempts to deliver this complaint to Porter, the post office sent the complaint back to the Bar on February 19, 1996. On February 22, 1996, Porter spoke with counsel from the Bar, who informed him that a complaint was coming in the mail. The Bar received the unclaimed complaint on February 27, 1996. Thereafter, the Bar sent Porter a notice of default by certified mail, and he again failed to retrieve the mailing. Based on these facts, the referee granted the Bar’s motion for default and scheduled a hearing limited solely to the issue of appropriate sanctions for the misconduct. After a hearing which Porter attended, the referee found Porter guilty of violating [various Bar rules].
 

 Id.
 
 at 812. Based on these facts, we concluded that we could not “endorse Porter’s knowing decision to ignore his mail.”
 
 Id.
 
 at 813 (citing
 
 Fla. Bar v. Santiago,
 
 521 So.2d 1111 (Fla.1988)).
 
 Porter
 
 does not support Tipler’s argument that he is entitled to an evidentiary hearing to determine whether his conduct was knowingly done.
 

 Tipler attempts to distinguish
 
 Porter
 
 by asserting that he did not know that the Bar mailed the complaint. Once again, Tipler is being disingenuous. At oral argument, Tipler stated that he was unable to retrieve the Bar’s complaint from his record Bar address because he was under treatment and doing business in California at the time. But he admitted that he did not change his record address or notify Bar counsel of his temporary change of address. Further, Tipler knew that the complaint had been filed. On November 21, 2006, Tipler moved to disqualify the referee in this case, and it was not until February 8, 2007, that the Bar filed its notice of application for default; the Bar filed its motion for default a month later on March 7, 2008. Accordingly, it appears that in addition to being properly served with the complaint (and thus being provided with due process), Tipler was dilatory in his actions to prevent the entry of a default judgment.
 

 Tipler’s final due process argument with regard to Case No. SC06-1775 is that justice favors hearing cases on the merits, especially in cases where disbarment is a possible disciplinary sanction. It is true that justice generally favors deciding issues on the merits rather than by default.
 
 See generally Asset Mgmt. Consultants of Va., Inc. v. City of Tamarac,
 
 913 So.2d 1179 (Fla. 4th DCA 2005);
 
 Allied Roofing Indus., Inc. v. Venegas,
 
 862 So.2d 6 (Fla. 3d DCA 2003). However, as noted above, in
 
 Porter
 
 we upheld a referee’s decision to enter default judgment and disbarred a lawyer based on facts strikingly similar to those in the case at bar. We stated: “By this default, the allegations in the Bar’s complaint were deemed admitted, and the default thereby provided the referee with competent, substantial evidence upon which to base the findings. Porter is precluded from now complaining about any factual findings deemed admitted.”
 
 Porter,
 
 684 So.2d at 813 (citations omitted);
 
 see also Fla. Bar v. Shoureas,
 
 892 So.2d 1002 (Fla.2004) (approving default judgment based on
 
 Porter
 
 and imposing three-year suspension);
 
 Fla. Bar v. Nunes,
 
 734 So.2d 393 (Fla.1999) (same). Hence, we did not see fit to vacate the default judgment entered in
 
 Porter
 
 even though disbarment was a possible sanction, which we actually imposed. Likewise, we see no reason to vacate the default judgment entered in Case No. SC06-1775. Instead, we approve the referee’s decision.
 

 Finally, Tipler challenges the referees’ recommendations as to discipline. AI-
 
 *1120
 
 though Tipler presents some inappropriate mitigation arguments, Tipler provides little analysis as to why he should not be disbarred. First, Tipler argues that the sexual relationship in Case No. SC03-149 was preexisting
 
 [4]
 
 and consensual, distinguishing it from cases where harsh sanctions were imposed for coercive sexual relationships with clients. As to Case No. SC05-1014, Tipler argues that the recommended discipline is inconsistent with the discipline imposed in Alabama and California for the same misconduct and that because lawyers are in court more often and are therefore more likely to be convicted for contempt, they should not be disciplined harshly for such a conviction. As to Case No. SC06-1775, Tipler argues that disbarment is unfair in light of the default judgment.
 

 In reviewing a referee’s recommended discipline, the Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction.
 
 See Fla. Bar v. Anderson,
 
 538 So.2d 852, 854 (Fla.1989);
 
 see also
 
 art. V, § 15, Fla. Const. However, generally speaking, the Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions.
 
 See Fla. Bar v. Temmer,
 
 753 So.2d 555, 558 (Fla.1999). “Further, this Court views cumulative misconduct more seriously than an isolated instance of misconduct.”
 
 Fla. Bar v. Carlon,
 
 820 So.2d 891, 899 (Fla.2002) (citing
 
 Fla. Bar v. Vining,
 
 761 So.2d 1044 (Fla.2000)). In the reciprocal discipline cases, we are free to impose a sanction greater than that imposed in other states.
 
 See Fla. Bar v. Hagendorf
 
 921 So.2d 611, 614 (Fla.2006).
 

 Considered in conjunction, Tipler’s violations in Cases No. SC03-149 and SC05-1014 warrant disbarment. In
 
 Florida Bar v. Scott,
 
 810 So.2d 893 (Fla.2002), we considered two cases involving the same lawyer. In the first case, Scott coerced a vulnerable, unwilling female client faced with the termination of her parental rights to engage in sexual relations in exchange for a reduction in attorney fees.
 
 Id.
 
 at 900. In the second case, Scott was found to have been held in criminal contempt for failing to attend the first day of a criminal trial and was dishonest in stating the reason for his inability to attend.
 
 Id.
 
 at 896. Other than an admonishment for minor misconduct, Scott had no prior discipline.
 
 Id.
 
 at 900. Nonetheless, we held that disbarment was the appropriate sanction.
 

 Although we specifically noted that the sexual coercion present in
 
 Scott
 
 — but not immediately apparent in the instant cases — was a determining factor,
 
 Scott
 
 provides useful guidance here. Like the respondent in
 
 Scott,
 
 Tipler, in Case No. SC03-149, engaged in a sexual relationship with a vulnerable client. In addition, Ti-pler was convicted of solicitation of prostitution. Further, in contrast to
 
 Scott,
 
 Ti-pler has not just one additional pending case, but two — Cases No. SC05-1014 and SC06-1775.
 
 [5]
 

 In Case No. SC05-1014, Tipler essentially manufactured evidence and elicited
 
 *1121
 
 false testimony from an innocent witness in an attempt to authenticate that evidence. For his misconduct, Tipler was held in criminal contempt and pleaded guilty to a misdemeanor charge of interference with judicial proceedings, which the Alabama Supreme Court held to be a “serious crime.” Additionally, in the proceedings before the referee, Tipler misrepresented the status of his disciplinary proceedings in California. Moreover, Tipler is currently suspended from the practice of law in Florida for misconduct in earlier proceedings and has in the past received two public reprimands and an admonishment.
 

 In
 
 Florida Bar v. Klausner,
 
 721 So.2d 720, 721 (Fla.1998), we reiterated that lawyers who knowingly and deliberately seek to corrupt the legal process will be excluded from the process. In
 
 Klausner,
 
 an inexperienced and remorseful attorney with no prior disciplinary history received a three-year suspension for submitting forged stipulations and misrepresenting the authenticity of the documents.
 
 Id.
 
 Additionally, although the attorney was criminally charged with felonies and misdemeanors, he was only adjudicated guilty of the misdemeanors.
 
 Id.
 
 Unlike the situation in
 
 Klausner,
 
 where we heavily considered the attorney’s inexperience and lack of a prior disciplinary history, Tipler, in the present cases, has substantial experience in the practice of law and an extensive disciplinary history in three states.
 

 We have already determined that, standing alone, Tipler’s misconduct in Case No. SC06-1775, which involved multiple misuses of client funds, warrants disbarment. We have recognized that the overwhelming majority of cases involving the misuse of client funds have resulted in disbarment.
 
 See Fla. Bar v. Valentine-Miller,
 
 974 So.2d 338, 338 (Fla.2008) (“There is never a valid reason for taking client funds held in trust or for completely abandoning clients.”). Case No. SC06-1775 involves seven instances of misuse of an aggregate of $57,680.44 in client funds and an instance in which Tipler attempted to defraud his creditors in the amount of $487,714.81 by misrepresenting facts to a federal bankruptcy court. Further, the fact that a default was entered against Tipler does not mitigate the discipline that should be imposed. As pointed out above, in
 
 Porter
 
 the Court disbarred an attorney despite the fact that the recommended discipline was based on a default judgment. Unlike the present case, however, the lawyer in
 
 Porter
 
 engaged in just one instance of misuse of client funds. In Case No. SC06-1775, Tipler stole money from seven clients and perpetrated a fraud on a federal court. Clearly, this type of misconduct warrants disbarment.
 

 Tipler has broken numerous Bar rules. He satisfied his own sexual appetite with a client as part of a sex-for-fees arrangement. He altered evidence and caused a witness to unknowingly give false testimony. He has charged his clients excessive fees and stolen their money. He has failed to maintain a trust account. He has broken public confidence in the profession of the practice of law by neglecting his clients and failing to prosecute their cases. He has labored under a conflict of interest. He has prejudiced the administration of justice by misrepresenting facts to multiple courts. And, throughout the disciplinary process in these cases, he has been dilatory, deceitful, and evasive. Tipler has thus engaged in an ongoing pattern of egregious misconduct. Although we question whether Tipler is truly amenable to rehabilitation, we take into account the mitigating factors found by the referee in Case No. SC03-149 and choose not to permanently disbar Tipler at this time.
 
 See Fla. Bar v. Bailey,
 
 803 So.2d 683, 695 n. 4 (Fla.2001) (declining to im
 
 *1122
 
 pose permanent disbarment). Based on the foregoing, there is no appropriate sanction for Tipler in these cases other than disbarment.
 

 CONCLUSION
 

 James Harvey Tipler is disbarred, effective nunc pro tunc February 23, 2006.
 

 In addition to the award of restitution and costs in our prior order in Case No. SC06-1775, judgment in Cases No. SC03-149 and SC05-1014 is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from James Harvey Tipler, in the amount of $5,946.82, for which sum let execution issue.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, and POLSTON, JJ., concur.
 

 LABARGA and PERRY, JJ., did not participate.
 

 [1]
 

 . With regard to Case Nos. SC03-149 and SC05-1014, Tipler also argues that the referee should have been disqualified and alleges that there is a motion to disqualify pending before the referee. In the motion, Tipler argues that the referee should be disqualified because he failed to consider as mitigating evidence the treatment that Tipler underwent as part of California’s ADP. Tipler complains that the referee instead considered inadmissible evidence and found in aggravation that Tipler misrepresented the finality of the California stipulation as to discipline. On review, Tipler
 
 *1117
 
 also directly challenges the referee’s findings with regard to the California stipulation.
 

 However, the motion to disqualify, which the referee denied as moot, was filed two months after the referee issued his reports in those cases and was therefore untimely.
 
 See Fischer v. Knuck,
 
 497 So.2d 240, 243 (Fla.1986). Additionally, as there is competent, substantial evidence in the record to support the referee’s findings with respect to the California disciplinary proceedings, we approve those findings without further comment.
 

 [2]
 

 . Rule 3-4.6 has been amended since Case No. SC03-149 was initiated.
 
 See In re Amendments to Rules Regulating Fla. Bar & Fla. Rules of Jud. Admin., 907
 
 So.2d 1138 (Fla.2005). Quoted here is the entire text of the rule as it existed at the time Case No. SC03-149 was initiated.
 

 [3]
 

 . Similarly, the referee correctly found that the Alabama disciplinary findings constituted conclusive proof of guilt in Case No. SC05-1014.
 

 [4]
 

 . There is no indication in the record that the sexual relationship was in fact preexisting. Tipler states that he would have established this fact had summary judgment not been entered against him, but he failed to raise the issue in his affidavit in opposition to summary judgment. In any event, Tipler is guilty of multiple other rule violations in Case No. SC03-149.
 

 [5]
 

 . The Court is also currently awaiting referee reports in an additional three disciplinary cases pending against Tipler.
 
 See Fla. Bar v. Tipler,
 
 No. SC07-1752 (Fla. filed Sept. 14, 2007);
 
 Fla. Bar v. Tipler,
 
 No. SC07-915 (Fla. filed May 17, 2007);
 
 Fla. Bar v. Tipler,
 
 No. SC06-2318 (Fla. filed Nov. 27, 2006).